1  Cheryl A. Sabnis (State Bar No. 224323)
   **KING & SPALDING LLP**
2  633 W 5th St Suite 1600
   Los Angeles, CA 90071
3  213-443-4378 (Phone)
   213-443-4310 (Fax)
4  csabnis@kslaw.com

5  James E. Berger (*pro hac vice forthcoming*)
   Thomas C. Childs (*pro hac vice forthcoming*)
6  Charlene C. Sun (*pro hac vice forthcoming*)
   **KING & SPALDING LLP**
7  1185 Avenue of the Americas
   New York, NY 10036-4003
8  212-556-2100 (Phone)
   212-556-2222 (Fax)
9  jberger@kslaw.com
   tchilds@kslaw.com
10 csun@kslaw.com

11 *Attorneys for Petitioner  Anatolie Stati, Gabriel Stati,*
   *Ascom Group, S.A., and Terra Raf Trans Traiding Ltd.*
12

13 [Respondent's Counsel Listed on Signature Page]

14                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
15

16 ANATOLIE STATI, GABRIEL          | Case No. 2:20-mc-00023
   STATI, ASCOM GROUP, S.A., AND    |
17 TERRA RAF TRANS TRAIDING         | **JOINT STIPULATION WITH**
   LTD.                             | **RESPECT TO PETITIONERS'**
18                                  | **MOTION TO COMPEL SPACE**
                 Petitioners,       | **EXPLORATION TECHNOLOGIES**
19                                  | **CORP.'S COMPLIANCE WITH**
            v.                      | **SUBPOENA *DUCES TECUM* AND**
20                                  | **DEPOSITION SUBPOENA**
   SPACE EXPLORATION               |
21 TECHNOLOGIES CORP.              | Date:
                                    | Trial Date:
22               Respondent.        | Judge:

23

24

25

26

27

28

## JOINT STIPULATION

### Table of Contents

I.  INTRODUCTORY STATEMENTS ................................................................. 3

    A.  The Stati Group's Introductory Statement ..................................... 3

    B.  SpaceX's Introductory Statement ................................................... 6

II.  DISCOVERY REQUESTS IN DISPUTE ..................................................... 9

    REQUEST No. 1 ............................................................................... 9

        1.  Stati Group's Position ................................................ 10

        2.  SpaceX's Position ..................................................... 12

    REQUEST No. 2 ............................................................................. 18

        1.  Stati Group's Position ................................................ 19

        2.  SpaceX's Position ..................................................... 20

    REQUEST No. 3 ............................................................................. 23

        1.  Stati Group's Position ................................................ 24

        2.  SpaceX's Position ..................................................... 26

    REQUEST No. 4 ............................................................................. 29

        1.  Stati Group's Position ................................................ 30

        2.  SpaceX's Position ..................................................... 31

    REQUEST No. 5 ............................................................................. 35

        1.  Stati Group's Position ................................................ 35

        2.  SpaceX's Position ..................................................... 37

    REQUEST No. 6 ............................................................................. 40

        1.  Stati Group's Position ................................................ 41

        2.  SpaceX's Position ..................................................... 42

    REQUEST No. 7 ............................................................................. 45

        1.  Stati Group's Position ................................................ 46

        2.  SpaceX's Position ..................................................... 47

1

III.  CONCLUSION ....................................................................................... 55

A.    Stati Group's Conclusion ............................................................. 55

B.    SpaceX's Conclusion ................................................................... 56

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTORY STATEMENTS

Pursuant to Federal Rules of Civil Procedure 45 and 69, and Central District of California Local Civil Rules 37-1, 37-2, 45-1 and 69-1, Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (together, the "**Stati Group**") and Respondent Space Exploration Technologies Corp. ("**SpaceX**") submit this Joint Stipulation with respect to Petitioners' motion to compel SpaceX's compliance with their amended subpoena *duces tecum* and deposition subpoena, both dated August 22, 2019 and served on August 28, 2019 (together, the "**Amended Subpoenas**").

The Amended Subpoenas were issued by the United States District Court for the District of Columbia (the "**D.D.C. Court**") in the matter of *Anatolie Stati, et al. v. Republic of Kazakhstan*, No. 14-cv-1638 (ABJ)(DAR), which is Petitioners' action to enforce a foreign arbitral award against the Republic of Kazakhstan (the "**ROK**"), and has been pending since 2014.

## A.    The Stati Group's Introductory Statement

Petitioners seek to compel SpaceX to produce documents and deposition testimony relevant to their efforts to enforce a more than U.S. $500 million judgment (the "**Judgment**") that they obtained against the ROK on March 23, 2018.  *See* Declaration of Charlene C. Sun ("**Sun Decl.**") at ¶¶ 1-2.  The Judgment, which was entered by the D.D.C. Court, confirms an arbitral award issued in favor of the Stati Group – and against the ROK – by a Stockholm-based tribunal more than six years ago (the "**Award**").  *Id. ¶* 2.  The ROK has refused to comply with the Award or the Judgment.  *Id. ¶* 2.  As a result, Petitioners have had to seek discovery from the ROK concerning the value and location of its assets located both inside and outside the United States.  *Id.* ¶ 3.  In response, the ROK has repeatedly and self-servingly asserted that it has no executable assets in the United States because it does not engage in any "commercial activities" here.  *Id.* ¶ 4.

3

Several months ago, however, Petitioners obtained publicly-available information suggesting that the ROK arranged for the launch of two satellites by SpaceX, a California-based private space-transportation services company.  *Id.* ¶ 5 & Ex. B.  In November 2018, a Kazakh newspaper quoted the ROK's Vice Minister of Defense and Aerospace Industry as stating that (1) the ROK "looked at the launches of other countries, such as SpaceX, and picked it up since it would be cheaper for the [Kazakh] budget" and (2) the use of SpaceX was "cost effective for the state."  *Id.* ¶ 17 & Ex. K.  On December 3, 2018, SpaceX launched the "KazSciSat-1" and "KazSTAT" satellites from a base in California.  *Id.* ¶ 5 & Ex. B.  A few days after the launch, the ROK's Minister of Defense and Aerospace Industry referred to the satellites as "[o]ur satellites" and stated that the ROK had already "received four signals within a day" from the satellites.  *Id.* ¶ 18 & Ex. L.

On August 12, 2019, Petitioners served a subpoena *duces tecum* and a deposition subpoena on SpaceX, seeking information concerning the commercial aspects of the launch.  On the basis of information provided by counsel for SpaceX, Petitioners understand that SpaceX provided the launch vehicle for the satellites, while another U.S. company, SpaceFlight Inc. ("**SpaceFlight**"), helped to coordinate the launch on behalf of clients from various countries, including Kazakhstan.  *Id.* ¶ 7.  On its website, SpaceFlight lists an entity named "Ghalam" among its "notable customers."  *Id.* ¶ 8 & Ex. D.  Ghalam LLP ("**Ghalam**") describes itself as a "joint venture" between AIRBUS DS and JSC NC Kazakhstan Gharysh Sapary "within the framework of the partnership agreement between Kazakhstan and France in 2010."  *Id.* ¶ 9 & Ex. E.  Ghalam is 72% owned by JSC NC Kazakhstan Gharysh Sapary (which in turn is 100% owned by the ROK), 0.5% owned by the ROK's Ministry of Digital Development, Innovations and Aerospace Industry, and 27.5% owned by Airbus Defense and Space.  *Id.* ¶ 9 & Ex. E.

4

On August 22, 2019, Petitioners served SpaceX with the Amended Subpoenas, which seek any communications that SpaceX had with the ROK or its agents in addition to commercial information about the launch. *Id.* ¶ 10.  On August 23, 2019, Petitioners served SpaceFlight with similar subpoenas, given its role in the launch. *Id.* ¶ 11 & Ex. G.

Based on the facts and circumstances discussed above, Petitioners believe that the ROK is enlisting agents to nominally enter into commercial transactions with U.S. service providers on its behalf, in order to circumvent payment of the Judgment or Award and to avoid putting its own assets at risk of execution.  The evidence sought from SpaceX and SpaceFlight will allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States, and it will also aid them in their efforts to identify and locate assets of the ROK, wherever they may be.

In its Objections and Responses to the Amended Subpoenas (the "**Objections**"), SpaceX refused to produce any documents or to make available a witness for deposition.  On October 25, 2019, Petitioners sent SpaceX a letter requesting a pre-filing conference of counsel (the "**October 25 Letter**").  SpaceX refused to confer with Petitioners after receiving the October 25 Letter, or any of Petitioners' renewed requests dated December 9, 2019, and December 30, 2019. *Id.* ¶ 22 & Exs. O, P.  Counsel for SpaceX takes the position that there would be no "value" in conferring with Petitioners until after the D.D.C. Court resolves Petitioners' pending motion to compel SpaceFlight's compliance with the subpoenas served upon it.  *Id.* Ex. P.  This argument lacks any merit, for several reasons.

**First**, the D.D.C. Court's decision on the SpaceFlight motion will not have any binding or persuasive effect in the present proceedings, given that Petitioners' motions involve different parties and are before different courts.  **Second**, SpaceX

5

and SpaceFlight played separate and completely different roles in the launch of the two Kazakh satellites.  *Id.* ¶ 7.  While SpaceX asserts that it did not enter into a contract with the ROK for the launch services, it has acknowledged communicating with Kazakh officials concerning the launch, and it has also indicated that it may have entered into a non-disclosure agreement ("**NDA**") with the ROK or its agents.  *Id.* ¶¶ 15, 19 & Ex. J.  Those communications, and any such NDA, are relevant to Petitioners' attempt to determine whether the launch transaction constitutes "commercial activity" of the ROK in the United States.  **Third**, SpaceX has also acknowledged communicating with Kazakh officials regarding business opportunities for future "launch services."  *Id.* Ex. J.  Such communications suggest that SpaceX has a relationship with the ROK different from, and broader than, that of SpaceFlight.

### B.    SpaceX's Introductory Statement

The Stati Parties are an enormously wealthy Moldovan father and son engaged in a global, scorched-Earth effort to collect on a $500 million judgment against the Republic of Kazakhstan.  Their strategy appears to include harassing anyone they can connect in any way to Kazakhstan, no matter how tangentially, to pressure the ROK to settle. Certainly as to SpaceX, which has nothing to do with this dispute, the effort is grossly misguided.

SpaceX designs, manufactures, and launches rockets for the purpose of placing payloads into orbit. Its customers include NASA, the Air Force, global satellite operators and telecommunications companies, and organizations with scientific missions such as universities.

On August 12, 2019, the Stati Parties served SpaceX with a subpoena seeking documents related to any agreements to launch "Kazakh Satellites", payments to or from Kazakhstan, funds placed in escrow in connection with such launch, and any debts SpaceX owes to Kazakhstan. The Stati Parties admit the sole basis for their

subpoena was a couple press articles from the Astana Times and Caspian News indicating that three small satellites supposedly loosely connected to an alleged Kazakh company were among 64 satellites placed into orbit during a SpaceX launch on December 3, 2018 (the "SSO Mission"). But as SpaceX immediately explained, SpaceX had no contractual or financial dealings with the ROK (or any other Kazakh entity) in connection with the launch. SpaceX's only customer for the SSO Mission was an American company called SpaceFlight, Inc. that aggregates small satellites for "ride share" missions. For the SSO Mission, SpaceFlight aggregated small satellites from dozens of its own customers into a unitary payload that SpaceX launched *for SpaceFlight*. SpaceX had no direct relationship with or obligations to any of SpaceFlight's customers and neither paid nor received money from any of them.

Notably, it does not appear that even SpaceFlight itself had a relationship with debtor. Petitioners posit that a company called Ghalam LLP contracted with SpaceFlight to include satellites on the SSO Mission. Ghalam is allegedly jointly owned by Airbus (the European aerospace giant), a second corporation, and a Kazakh government ministry. The ROK supposedly owns the latter two entities, which Petitioners conclude makes Ghalam the ROK's alter ego. This ethereal chain of contacts—from SpaceX to SpaceFlight to Ghalam to a corporation and Kazakh ministry to the ROK—is how Petitioners try to justify subpoenaing SpaceX.

When SpaceX informed Petitioners there were no financial transactions between it and any entity even allegedly connected to the debtor, they responded by serving *broader* subpoenas that additionally asked for all of SpaceX's communications with "Kazakhstan" (as very broadly defined by the subpoena) and all communications concerning the 2018 launch, regardless of whether they had anything to do with Kazakhstan (the "Amended Subpoenas").

The scope of discovery to enforce judgments is not unlimited, and there is no authority for seeking discovery from a third party that had no financial or other relevant dealings with the debtor. Simply put, the Amended Subpoenas go far beyond what is permitted.

Critically, ROK is a sovereign nation whose assets are afforded broad immunity from attachment under U.S. law. The only ROK "property" the Stati Parties can legally attach is property in the United States used in the United States for commercial purposes.[1] The Stati Parties have not explained how the Amended Subpoenas could possibly lead to such property. They have not shown the satellites belong to the ROK (or its alter ego); the satellites appear to serve non-commercial, scientific purposes; and in any event they are now in orbit, not the United States, and are not attachable. Thus, the Amended Subpoenas will not aid Petitioners' effort to satisfy their judgment against the ROK and serve no legitimate purpose.

Although it would not result in any useful documents, responding to the Amended Subpoenas would impose a massive burden on SpaceX. In particular, Request 6 (seeking "[a]ll communications between [SpaceX] and Kazakhstan" as broadly defined) and Request 7 (seeking "[a]ll communications between [SpaceX] and any Person related to the past… launch or operation of any Kazakh Satellite") are extremely overbroad. By itself, Request 7 would require SpaceX to search for communications in the possession, custody or control of hundreds, possibly thousands, of custodians involved in the years-long endeavor of launching a rocket into space. As those requests are drafted, SpaceX estimates the response cost would easily run into the tens of thousands of dollars if not more. (*See* Cardaci Decl. ¶¶ 13-17.) This burden is unjustified because it would not uncover anything useful.[2]

---

[1] 28 U.S.C. § 1610(a).

[2] That is particularly true here, as Petitioners have already attached over $6 billion in ROK assets, more than 12 times the judgment amount. (Luskin Decl. ¶¶ 2-3; Exs. 4-5.)

8

Finally, if the Court does not quash the Amended Subpoenas immediately, it should defer ruling on the Stati Parties' motion.  The Stati Parties served SpaceFlight with a largely identical subpoena that is the subject of a fully briefed motion to compel in the court hearing the underlying collection action, the D.D.C. Court.  Although SpaceX is further removed from Kazakhstan than SpaceFlight, that motion raises many of the same issues as this one.  If this Court were to rule before the court handling the proceedings, it could result in inconsistent rulings.[3]

The Amended Subpoenas should be quashed and Petitioners sanctioned under Rule 45(d)(1) for abusing the subpoena process to harass third parties.

## II.    DISCOVERY REQUESTS IN DISPUTE

**REQUEST No. 1**

All contracts or agreements governing and/or related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite, including but not limited to those referenced in Exhibit 1 attached to the Amended Subpoenas, and deposition testimony concerning the same.

**SPACEX'S RESPONSE TO REQUEST No. 1:**

---

[3]  The Stati Parties' claim that SpaceX refused to meet and confer is false.  They served the original subpoenas on August 14, 2019. SpaceX immediately initiated discussions to explain the lack of any connection between SpaceX and debtor, and the Stati Parties responded by serving the broader Amended Subpoenas. SpaceX reached out to discuss the facially unreasonable time frames and the scope of the new requests. SpaceX served its objections and responses on September 10, 2019. The parties met and conferred about SpaceX's responses on September 12, 2019 and exchanged additional communications in the following weeks. The Stati Parties sent SpaceX a letter on October 25, 2019 asking to meet and confer further; SpaceX responded on November 1, 2019 with the common sense proposal that the parties wait for the D.C. Court's decision on the then-recently-filed, largely identical SpaceFlight motion, as that ruling would provide guidance to their dispute. The Stati Parties waited over a month before responding on December 9, 2019; the response said simply that they did not want to wait. SpaceX responded the following week by reiterating why waiting for ruling on the SpaceFlight motion made sense. On December 30, 2019, the Stati Parties finally explained their reasoning for not wanting to wait, but their reasoning was flawed, as explained point-by-point by SpaceX in a January 10, 2020 response. Without responding to SpaceX's explanation, the Stati Parties filed the instant motion to compel.  (Cardaci Decl. ¶ 12; Sun Decl. Ex. P.)

1    SpaceX incorporates its General Responses and Objections stated above and

2    further objects to this Request on the following grounds and to the extent that: (1)

3    it vague and ambiguous, including without limitation in its definitions of You and

4    Kazakh Satellite and reference to Exhibit 1, which appears to be an incomplete

5    copy of an article published in "Caspian News"; (2) it is overly broad and unduly

6    burdensome. Subject to and without waiving the foregoing objections, SpaceX

7    responds as follows: SpaceX never entered into a contract with the Republic of

8    Kazakhstan for SpaceX's launch or operation of any space satellite belonging to

9    the Republic of Kazakhstan.

10          **1.      Stati Group's Position**

11    SpaceX's response with respect to this request is incomplete and its

12    objections are unwarranted.  The Amended Subpoenas seek "[a]ll contracts or

13    agreements governing and/or related to the past . . . or future launch or operation of

14    any Kazakh Satellite," regardless of whether the named counterparty to such

15    agreement is "the Republic of Kazakhstan."

16          As stated in SpaceX's September 10, 2019 cover email transmitting

17    SpaceX's Objections, SpaceX contracted with SpaceFlight in connection with the

18    "KazSciSat-1" and "KazSTAT" satellites; accordingly, any agreements entered

19    into with SpaceFlight relating to that transaction are responsive to this document

20    request and should be produced.

21          SpaceX's cover email also stated that "with the exception of NDAs, SpaceX

22    had no direct contractual relationship with any of Spaceflight's customers,

23    including any of the manufacturers/owners/operators of any payloads connected to

24    Kazakhstan."  First, any NDA with Kazakhstan (as defined in the Amended

25    Subpoenas) would be responsive to this document request and should be produced.

26    Second, Petitioners note that SpaceX's representation that it has no contractual

27

28

relationships with any "manufacturers, owners, or operators of any Kazakh Satellite" does not appear in its formal Objections.

Accordingly, Petitioners request an order directing SpaceX to produce all contracts or agreements governing and/or related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to contracts or agreements concerning "KazSciSat-1" and "KazSTAT," whether with SpaceFlight or with any agent acting on behalf of the ROK, such as Ghalam), and deposition testimony concerning the same.

Relevant information is information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable.  Fed. R. Civ. P. 26(b)(1).  Relevancy is "construed 'liberally and with common sense'" (*Dale Evans Parkway 2012 v. Nat'l Fire & Marine Ins. Co*., No. ED CV 15-979-JGB (SPx), 2016 U.S. Dist. LEXIS 187094, at *8-9 (C.D. Cal. Oct. 27, 2016).  Discovery must be permitted unless it is "clear" that the information sought has "no possible bearing" on the case.  *Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12888106, at *3 (C.D. Cal. Dec. 10, 2012).  The party that resists discovery has the "burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Keith H. v. Long Beach Unified Sch. Dist*., 228 F.R.D. 652, 655-56 (C.D. Cal. 2005).

The documents and information requested by Request No. 1 are relevant because they will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide.

SpaceX has failed to show how Petitioners' requests are "vague and ambiguous," and it has not explained how the terms "You" and "Kazakh Satellite" are so.

1    SpaceX has also failed to show how Petitioners' requests are "overly broad

2    or unduly burdensome."  During the meet and confer sessions, Petitioners

3    repeatedly expressed willingness to refine and narrow the scope of the Amended

4    Subpoenas, as well as the search terms used by SpaceX to locate potentially-

5    responsive electronically stored information ("**ESI**").  Sun Decl. ¶ 20 & Exs. M, O.

6    The same offer was made in Petitioners' October 25 Letter.  SpaceX has given

7    Petitioners no indication of the volume of documents that would be responsive to

8    the Amended Subpoenas, or how much it would cost to review or produce such

9    documents.  Nor can SpaceX, a company whose equity value rose to more than

10   U.S. $33 billion as of May 2019 (*Id*. Ex. N), credibly claim that it lacks the

11   resources to comply with the Amended Subpoenas.  SpaceX has not even

12   attempted to show that the burden of complying with the Amended Subpoenas

13   outweighs the likely benefit of such discovery to Petitioners, who have not been

14   able to satisfy a more than U.S. $500 million judgment against the ROK for over

15   six years.

16   Petitioners have previously expressed their willingness, and remain willing,

17   to enter into a reasonable confidentiality agreement or protective order prior to any

18   document production or deposition from SpaceX.  *Id.* Exs. I, O.

19              **2.     SpaceX's Position**

20   **Irrelevant & Overbroad.**  Petitioners demand all "contracts or agreements

21   governing" the past launch or operation of any Kazakh Satellite, plus testimony on

22   that topic.[4]  Leaving aside that Petitioners previously conceded SpaceX did not

23   have relevant responsive documents (Sun Decl. Ex. M.), this request is misguided

---

24

25   [4]  The subpoenas' definition of Kazakhstan, and therefore "Kazakh Satellite," is unintelligible.

26   Kazakhstan is defined as "Kazakhstan, as well as its government, ministries, divisions,
departments, affiliates or subordinate organizations thereof, and any and all persons acting or
purporting to act on behalf of any of them or" Kazakhstan.  (Sun Decl. Ex. F p. 2 ¶ 7.)  SpaceX

27   has no way of knowing every Kazakh ministry, division, department, affiliate or subordinate
organization, or person acting or purporting to act on any of these entities' behalf.

28

12

because it does not seek documents or information that are relevant to the Stati Parties' efforts to satisfy their judgment against the ROK.[5]

The action underlying the Amended Subpoenas is a collection action against a sovereign nation entitled to broad sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1602, *et seq*. Specifically, Petitioners may enforce their judgment only against property of the ROK "in the United States [and] used for a commercial activity in the United States." 28 U.S.C. § 1610(a). The Stati Parties have not even attempted to identify property alleged to be in the United States, much less property being used here for commercial activity here. They have not shown the satellites were ever used for commercial activity— they appear to be scientific in nature[6]—and in any event they cannot dispute that the satellites are no longer in the United States. Moreover, SpaceX had no financial relationship with the ROK and no money has been exchanged or is owed between them, as Petitioners' counsel acknowledges. (Sun Decl. Ex. M.) Discovery into non-attachable foreign assets is impermissible. *See EM Ltd. v. Republic of Argentina*, 473 F. 3d 463, 486 (2007) (denying discovery into immune assets of a foreign sovereign debtor).

Even if the Stati Parties could identify properly attachable property, SpaceX has made clear, and the Stati Parties have accepted, that SpaceX has no possibly relevant agreements. The only documents SpaceX has that are even arguably responsive to this request are agreements between it and SpaceFlight, its only customer for the SpaceFlight Mission. SpaceFlight is not alleged to be the ROK's agent or alter ego, and any amounts due for the 2018 launch were paid long ago.

---

[5] Throughout this brief SpaceX refers to the government of Kazakhstan as the "ROK." "Kazakhstan" is used as that term is very broadly defined in the Amended Subpoenas, to the extent SpaceX understands that definition. *See* fn. 3, infra.

[6] The articles Petitioners cite say the satellites were designed to "study the ionosphere" and "take high-resolution photographs around the globe," not for commercial use. (Id. ¶ 5, Ex. B p. 1.)

(Cardaci Decl. ¶ 4.)  Contracts between SpaceX and SpaceFlight have no conceivable relevance to Petitioners' efforts to collect on the judgment.

Nor do Petitioners allege any direct connection between SpaceX and the debtor that would support third-party discovery.  Petitioners' convoluted theory is that Seattle-based SpaceFlight contracted with SpaceX to launch a payload holding satellites for more than 30 other customers; SpaceFlight contracted with a company called Ghalam LLP to include three small satellites in the 64-satellite stack; Ghalam is jointly owned by Airbus (the European aerospace manufacturer), another corporate entity whose shares are allegedly owned by the Kazakh government, and the Kazakh Ministry of Digital Development (as a 0.5% owner); and that through the ROK's purely speculative control of the latter two entities, Ghalam may somehow be the ROK's alter ego.  In other words, Petitioners admit there is no direct connection between SpaceX and ROK.  Petitioners do not cite to any authority permitting third-party discovery to enforce a judgment without demonstrating *any* connection between the subpoena target and the debtor or its assets, and there is none.

Petitioners not only concede no direct connection to SpaceX, they do not even provide support for their alleged *indirect* connection (four degrees removed).  Before subpoenaing third parties, Petitioners need to provide evidence indicating financial transactions somehow connected to the debtor, or at least be able to articulate plausible facts that might support such a connection.  But Petitioners point only to Ghalam's website that states Ghalam is part owned by Airbus as well as a corporation and a Kazakh government ministry (as 0.5% owner).  (Sun Decl. ¶ 9; Ex. E.)  If this information is true, what it actually shows is that Ghalam is an independent corporate entity, *not the alter ego of the ROK*.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate

law is that the corporation and its shareholders are distinct entities," and this rule applies to alleged instrumentalities of foreign sovereigns).

Petitioners' only argument in support of relevance is the conclusory statement that the demanded information "will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no 'commercial activity' in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide." But the motion never explains how the demanded information will achieve either goal, *i.e.*, how an agreement between SpaceX and SpaceFlight would reveal commercial activity of the ROK. And it would not help "aid Petitioners in their efforts to enforce the Award" because the agreement concerns only the completed 2018 launch and has nothing to do with the ROK's assets or activities, attachable or otherwise.

Because Petitioners have failed to show any connection between the information demanded in the subpoenas and any facts potentially relevant to enforcing the judgment, the subpoenas should be quashed on relevance grounds. The scope of third-party discovery to enforce judgments is "not unlimited" and "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor[.]" *Itochu Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014). Courts should be on guard to prevent their subpoena power from "becom[ing] a means of harassment of the debtor or third persons." *Id.* Petitioners agree that relevancy is guided by "common sense" but nonsensically demand production from a third party of documents that could not conceivably help them locate or attach assets of the ROK. *Dale Evans Parkway 2012 v. Nat'l Fire & Marine Ins. Co.*, No. ED CV 15-979-JGB (SPx), 2016 U.S. Dist. LEXIS 187094, at *8-9 (C.D. Cal. Oct. 27, 2016).

**Stay Pending D.D.C. Court Ruling.** If not immediately quashed, the Amended Subpoenas should be stayed pending a ruling on the Stati Parties' motion

to compel largely identical documents and information from SpaceFlight. Petitioners issued a subpoena to SpaceFlight on August 23, 2019, asking for basically the same information they now seek from SpaceX.  (Sun Decl. ¶ 11, Ex. G.)  Their motion has been fully briefed since October. This Court should stay the subpoenas pending the D.D.C. Court's opinion to avoid potentially inconsistent rulings and for judicial economy.

First, it was the D.D.C. Court that domesticated Petitioners' judgment, and that court has already heard myriad disputes between the ROK and Petitioners over the five-plus years the collection action has been pending.  As the court most familiar with this matter, it is well positioned to rule on the issues presented by the two motions, including FSIA immunity, Ghalam's purported alter ego status, and relevance.  Second, letting that court act first will avoid the possibility of inconsistent rulings.  Third, if the D.D.C. Court quashes the SpaceFlight subpoena, then logically the Amended Subpoenas, asking for virtually identical information but one additional step removed from alleged Kazakh entities, should also fail. Fourth, if the D.D.C. grants the SpaceFlight motion, then Petitioners will receive from SpaceFlight every potentially responsive document they could be entitled to about the launch.  Finally, the only requests unique to SpaceX relate to communications with "Kazakhstan" (that never resulted in contractual or financial relationships) and "all communications" relating to the launch of any Kazakh satellite.  Petitioners have never explained how this information is even potentially relevant to enforcing their judgment, much less supported it with facts or evidence. A decision on SpaceX's response should come after the SpaceFlight ruling.

The Stati Parties' arguments against a stay are meritless.  Petitioners claim that the motions "involve different parties and are before different courts," so neither court's decision will be binding on the other.  This does not warrant a stay. The SpaceFlight subpoena targets identical financial information about the same

launch.  The D.D.C. Court's decision will address many of the key factual issues with both motions, including whether Ghalam is the ROK's alter ego, relevance, and the scope of FSIA immunity and how this relates to discovery.  Petitioners have not shown that the D.D.C. Court will apply substantially different law to these *identical* factual questions.  Just because the SpaceFlight decision would not be binding on this Court does not mean its ruling would not be helpful or avoid the potential for inadvertently conflicting ruling in the same case.

Petitioners next argue against a stay because "SpaceX and SpaceFlight played separate and completely different roles in the launch," so supposedly have different information.  Not so.  It is true that SpaceFlight, because it did have contractual relationships with Ghalam, likely has arguably responsive documents beyond what SpaceX has related to the SSO Mission.  But SpaceX would not have any relevant documents related to the SSO Mission that SpaceFlight does not have.  Indeed, the primary document that Petitioners claim to seek with this request is the agreement between SpaceX and SpaceFlight, which SpaceFlight obviously has.

In any event, even if SpaceX did have unique documents, their discoverability will likely turn on the same issues as the discoverability of the documents that are the subject of the SpaceFlight motion.  Certainly, if the D.D.C. Court decides the Stati Parties are not entitled to documents from SpaceFlight, there would be no rational basis to require production from SpaceX, which is even more removed from the alleged Kazakh entities.

Finally, Petitioners misleadingly argue that "SpaceX has acknowledged communicating with Kazakh officials regarding business opportunities for future 'launch services,'" so must have a broader relationship with Kazakhstan than SpaceFlight.  This ignores what Petitioners already know: business development communications between SpaceX and the ROK have never resulted in contractual or financial relationships of any kind.  (Cardaci Decl. ¶ 7.)  More to the point, there

17

1  is no connection between these conversations and information relevant to

2  enforcing Petitioners' judgment.  See SpaceX's Position Regarding Request No. 7.

3  If Petitioners are right that all contacts with the debtor regardless of subject matter

4  are potentially relevant, then every person or entity interacting with Kazakhstan (or

5  its vaguely defined instrumentalities) would be subject to Petitioners' subpoena.

6  That is clearly not the law.

7     **Confidentiality.**  For the reasons stated in SpaceX's response to Request 7,

8  infra, if SpaceX were obligated to produce documents responsive to this request,

9  they would very likely include confidential information, and SpaceX will not

10 produce them in the absence of an acceptable confidentiality order.[7]

11    **Sanctions (Fed. R. Civ. P. 45(d)(1)).**  For the reasons stated in SpaceX's

12 response to Request 7, infra, Petitioners should be sanctioned under Federal Rule

13 of Civil Procedure 45(d)(1) for this abuse of the Court's subpoena power.

14

15 **REQUEST No. 2**

16    All documents and communications, and deposition testimony, regarding

17 any payments made by Kazakhstan to SpaceX related to the past (since January 1,

18 2016) or future launch or operation of any Kazakh Satellite (including but not

19 limited to those referenced in Exhibit 1 attached to the Amended Subpoenas),

20 including such documents and communications sufficient to identify the Financial

21 Institution and account from which and to which such payment was made.

22    **SPACEX'S RESPONSE TO REQUEST No. 2:**

23    SpaceX incorporates its General Responses and Objections stated above and

24 further objects to this Request on the following grounds and to the extent that: (1)

25

26 _____

27 [7] SpaceX explained this to the Stati Parties back in August 2019 and even provided them with a
form of protective order they could use. The Stati Parties did not dispute that it would be
appropriate to move the court to enter a protective order before any SpaceX production.

28

1  it vague and ambiguous, including without limitation in its definitions of You,

2  Kazakhstan and Kazakh Satellite and reference to Exhibit 1, which appears to be

3  an incomplete copy of an article published in "Caspian News"; (2) it is overly

4  broad and unduly burdensome; and (3) it seeks confidential business information

5  that SpaceX will not produce in the absence of a protective order. Subject to and

6  without waiving the foregoing objections, SpaceX responds as follows: following a

7  reasonable, diligent inquiry and/or search of the files likely to contain responsive

8  documents, SpaceX has not located any record of any payments made by the

9  Republic of Kazakhstan related to SpaceX's launch or operation of any space

10 satellite belonging to the Republic of Kazakhstan.

11            **1.    Stati Group's Position**

12         SpaceX's response with respect to this request is incomplete and its

13 objections are unwarranted.  The definition of "Kazakhstan" in the Amended

14 Subpoenas includes not only "the Republic of Kazakhstan," but also agents acting

15 on behalf of the ROK, including, without limitation, Ghalam.

16         Accordingly, Petitioners request an order directing SpaceX to produce all

17 documents and communications, and deposition testimony, regarding any

18 payments made by Kazakhstan to SpaceX related to the past (since January 1,

19 2016) or future launch or operation of any Kazakh Satellite (including but not

20 limited to "KazSciSat-1" and "KazSTAT," whether through SpaceFlight or

21 through any agent acting on behalf of the ROK, such as Ghalam), including such

22 documents and communications sufficient to identify the Financial Institution and

23 account from which such payment was made.

24         The documents and information requested by Request No. 2 are relevant

25 because they will: (i) allow Petitioners to test the veracity of the ROK's claim that

26 it has engaged in no "commercial activity" in the United States; and (ii) aid

27 Petitioners in their efforts to enforce the Award and the Judgment world-wide.

28

19

SpaceX has failed to show how Petitioners' requests are "vague and ambiguous," and it has not explained how the terms "You," "Kazakhstan" and "Kazakh Satellite" are so.

SpaceX has also failed to show how Petitioners' requests are "overly broad or unduly burdensome."   During the meet and confer sessions, Petitioners repeatedly expressed willingness to refine and narrow the scope of the Amended Subpoenas, as well as the search terms used by SpaceX to locate potentially-responsive ESI.  Sun Decl. ¶ 20 & Exs., M, O.  The same offer was made in Petitioners' October 25 Letter.  SpaceX has given Petitioners no indication of the volume of documents that would be responsive to the Amended Subpoenas, or how much it would cost to review or produce such documents.  Nor can SpaceX, a company whose equity value rose to more than U.S. $33 billion as of May 2019 (*Id*. Ex. N), credibly claim that it lacks the resources to comply with the Amended Subpoenas.  SpaceX has not even attempted to show that the burden of complying with the Amended Subpoenas outweighs the likely benefit of such discovery to Petitioners, who have not been able to satisfy a more than U.S. $500 million judgment against the ROK for over six years.

Petitioners have previously expressed their willingness, and remain willing, to enter into a reasonable confidentiality agreement or protective order prior to any document production or deposition from SpaceX.  *Id*. Exs. I, O.

## 2.     SpaceX's Position

Petitioners demand all "documents and communications regarding payments made by Kazakhstan to [SpaceX] related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite[.]"  (Sun Decl. Ex. F at 3.)  The motion to compel a response should be denied.

**There Are No Responsive Documents.** SpaceX has already informed Petitioners that Kazakhstan (even as overbroadly defined in the Amended

20

Subpoenas) has never made payments to SpaceX, and that SpaceX therefore does not have documents responsive to this request.  Petitioners "accept[ed] your representations that SpaceX does not have any documents or information responsive to requests 1-5," but inexplicably moves to compel a response anyway. (Sun Decl. Ex. M; *see also* Cardaci Decl. ¶¶ 4-5.)

**Irrelevant.**  Leaving aside that SpaceX has no responsive documents (Sun Decl. Ex. M.), this request is misguided because it does not seek documents or information that are relevant to the Stati Parties' efforts to satisfy their judgment against the ROK.

The action underlying the Amended Subpoenas is a collection action against a sovereign nation entitled to broad sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA").  28 U.S.C. § 1602, *et seq*.  Specifically, Petitioners may enforce their judgment only against property of the ROK "in the United States [and] used for a commercial activity in the United States."  28 U.S.C. § 1610(a).  The Stati Parties have not even attempted to identify property alleged to be in the United States, much less property being used here for commercial activity here.  They have not shown the satellites were ever used for commercial activity— they appear to be scientific in nature—and in any event they cannot dispute that the satellites are no longer in the United States.  Moreover, SpaceX had no financial relationship with the ROK and no money has been exchanged or is owed between them, as Petitioners' counsel acknowledges.  (Sun Decl. Ex. M.)  Discovery into non-attachable foreign assets is impermissible.  *See EM Ltd. v. Republic of Argentina*, 473 F. 3d 463, 486 (2007) (denying discovery into immune assets of a foreign sovereign debtor).

Nor do Petitioners allege any direct connection between SpaceX and the debtor that would support third-party discovery.  Petitioners' convoluted theory is that Seattle-based SpaceFlight contracted with SpaceX to launch a payload holding

21

satellites for more than 30 other customers; SpaceFlight contracted with a company called Ghalam LLP to include three small satellites in the 64-satellite stack; Ghalam is jointly owned by Airbus (the European aerospace manufacturer), another corporate entity whose shares are allegedly owned by the Kazakh government, and the Kazakh Ministry of Digital Development (as a 0.5% owner); and that through the ROK's purely speculative control of the latter two entities, Ghalam may somehow be the ROK's alter ego.  In other words, Petitioners admit there is no direct connection between SpaceX and ROK.  Petitioners do not cite to any authority permitting third-party discovery to enforce a judgment without demonstrating *any* connection between the subpoena target and the debtor or its assets, and there is none.  The scope of third party discovery to enforce judgments is "not unlimited" and "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor[.]"  *Itochu Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014).  Courts should be on guard to prevent their subpoena power from "becom[ing] a means of harassment of the debtor or third persons."  *Id*.

Petitioners not only concede no direct connection to SpaceX, they do not even provide support for their alleged *indirect* connection (four degrees removed). Before subpoenaing third parties, Petitioners need to provide evidence indicating financial transactions somehow connected to the debtor, or at least be able to articulate plausible facts that might support such a connection.  But Petitioners point only to Ghalam's website that states Ghalam is part owned by Airbus as well as a corporation and a Kazakh government ministry (as 0.5% owner).  (Sun Decl. ¶ 9; Ex. E.)  If this information is true, what it actually shows is that Ghalam is an independent corporate entity, *not the alter ego of the ROK.  Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate

law is that the corporation and its shareholders are distinct entities," and this rule applies to alleged instrumentalities of foreign sovereigns).

Petitioners' only argument in support of relevance is the conclusory statement that the demanded information "will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no 'commercial activity' in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide." But Petitioners already acknowledged that SpaceX does not have responsive documents. (Sun Decl. Ex. M.) They did not have any legitimate reason to think otherwise when they served the subpoenas. Petitioners need to offer more than conclusory statements about relevance before burdening third parties with a subpoena response.

**Stay Pending D.D.C. Ruling.** For the reasons stated in SpaceX's response to Request 1, if the Court does not simply quash the Amended Subpoenas immediately, it should stay ruling on the current motion pending a ruling from the D.D.C. Court on the Stati Parties' motion to compel largely identical documents and information from SpaceFlight.

**Confidentiality.** For the reasons stated in SpaceX's response to Request 7, infra, if SpaceX were obligated to produce documents responsive to this request, they would very likely include confidential information, and SpaceX will not produce them in the absence of an acceptable confidentiality order.

**Sanctions (Fed. R. Civ. P. 45(d)(1)).** For the reasons stated in SpaceX's response to Request 7, infra, Petitioners should be sanctioned under Federal Rule of Civil Procedure 45(d)(1) for this abuse of the Court's subpoena power.

**REQUEST No. 3**

All documents and communications, and deposition testimony, regarding any payments made by SpaceX to Kazakhstan related to the past (since January 1,

23

2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in Exhibit 1 attached to the Amended Subpoenas), including such documents and communications sufficient to identify the Financial Institution and account from which and to which such payment was made.

**SPACEX'S RESPONSE TO REQUEST No. 3:**

SpaceX incorporates its General Responses and Objections stated above and further objects to this Request on the following grounds and to the extent that: (1) it vague and ambiguous, including without limitation in its definitions of You, Kazakhstan and Kazakh Satellite and reference to Exhibit 1, which appears to be an incomplete copy of an article published in "Caspian News"; (2) it is overly broad and unduly burdensome; and (3) it seeks confidential business information that SpaceX will not produce in the absence of a protective order. Subject to and without waiving the foregoing objections, SpaceX responds as follows: following a reasonable, inquiry and/or diligent search of the files likely to contain responsive documents, SpaceX has not located any record of any payments made by SpaceX to the Republic of Kazakhstan related to SpaceX's launch or operation of any space satellite belonging to the Republic of Kazakhstan.

**1.      Stati Group's Position**

SpaceX's response with respect to this request is incomplete and its objections are unwarranted.  The definition of "Kazakhstan" in the Amended Subpoenas includes not only "the Republic of Kazakhstan," but also agents acting on behalf of the ROK, including, without limitation, Ghalam.

Accordingly, Petitioners request an order directing SpaceX to produce all documents and communications, and deposition testimony, regarding any payments made by SpaceX to Kazakhstan related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to "KazSciSat-1" and "KazSTAT," whether through SpaceFlight or

through any agent acting on behalf of the ROK, such as Ghalam), including such documents and communications sufficient to identify the Financial Institution and account from which and to which such payment was made.

The documents and information requested by Request No. 3 are relevant because they will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide.

SpaceX has simply failed to show how Petitioners' requests are "vague and ambiguous," and it has not explained how the terms "You," "Kazakhstan" and "Kazakh Satellite" are so.

SpaceX has also failed to show how Petitioners' requests are "overly broad or unduly burdensome."  During the meet and confer sessions, Petitioners repeatedly expressed willingness to refine and narrow the scope of the Amended Subpoenas, as well as the search terms used by SpaceX to locate potentially-responsive ESI.  Sun Decl. ¶ 20 & Exs., M, O.  The same offer was made in Petitioners' October 25 Letter. SpaceX has given Petitioners no indication of the volume of documents that would be responsive to the Amended Subpoenas, or how much it would cost to review or produce such documents.  Nor can SpaceX, a company whose equity value rose to more than U.S. $33 billion as of May 2019 (*Id*. Ex. N), credibly claim that it lacks the resources to comply with the Amended Subpoenas.  SpaceX has not even attempted to show that the burden of complying with the Amended Subpoenas outweighs the likely benefit of such discovery to Petitioners, who have not been able to satisfy a more than U.S. $500 million judgment against the ROK for over six years.

Petitioners have previously expressed their willingness, and remain willing, to enter into a reasonable confidentiality agreement or protective order prior to any document production or deposition from SpaceX.  *Id.* Exs. I, O.

1

### 2.    SpaceX's Position

2       Petitioners demand all "documents and communications regarding any

3   payments made by [SpaceX] to Kazakhstan related to the past (since January 1,

4   2016) or future launch or operation of any Kazakh Satellite[.]"  (Sun Decl. Ex. F at

5   3.)  The motion to compel a response should be denied.

6       **There Are No Responsive Documents.** First, SpaceX has already informed

7   Petitioners that SpaceX has never made payments to Kazakhstan (even as

8   overbroadly defined in the Amended Subpoenas), and that SpaceX therefore does

9   not have documents responsive to this request.  Petitioners "accept[ed] your

10  representations that SpaceX does not have any documents or information

11  responsive to requests 1-5," but inexplicably moves to compel a response anyway.

12  (Sun Decl. Ex. M; *see also* Cardaci Decl. ¶¶ 4-5.)

13      **Irrelevant.**  Leaving aside that SpaceX has no responsive documents (Sun

14  Decl. Ex. M.), this request is misguided because it does not seek documents or

15  information that are relevant to the Stati Parties' efforts to satisfy their judgment

16  against the ROK.

17      The action underlying the Amended Subpoenas is a collection action against

18  a sovereign nation entitled to broad sovereign immunity under the Foreign

19  Sovereign Immunities Act ("FSIA").  28 U.S.C. § 1602, *et seq.*  Specifically,

20  Petitioners may enforce their judgment only against property of the ROK "in the

21  United States [and] used for a commercial activity in the United States."  28 U.S.C.

22  § 1610(a).  The Stati Parties have not even attempted to identify property alleged to

23  be in the United States, much less property being used here for commercial activity

24  here.  They have not shown the satellites were ever used for commercial activity—

25  they appear to be scientific in nature—and in any event they cannot dispute that the

26  satellites are no longer in the United States.  Moreover, SpaceX had no financial

27  relationship with the ROK and no money has been exchanged or is owed between

28

26

them, as Petitioners' counsel acknowledges.  (Sun Decl. Ex. M.)  Discovery into

non-attachable foreign assets is impermissible.  *See EM Ltd. v. Republic of*

*Argentina*, 473 F. 3d 463, 486 (2007) (denying discovery into immune assets of a

foreign sovereign debtor).

Nor do Petitioners allege any direct connection between SpaceX and the

debtor that would support third-party discovery.  Petitioners' convoluted theory is

that Seattle-based SpaceFlight contracted with SpaceX to launch a payload holding

satellites for more than 30 other customers; SpaceFlight contracted with a company

called Ghalam LLP to include three small satellites in the 64-satellite stack;

Ghalam is jointly owned by Airbus (the European aerospace manufacturer),

another corporate entity whose shares are allegedly owned by the Kazakh

government, and the Kazakh Ministry of Digital Development (as a 0.5% owner);

and that through the ROK's purely speculative control of the latter two entities,

Ghalam may somehow be the ROK's alter ego.  In other words, Petitioners admit

there is no direct connection between SpaceX and ROK.  Petitioners do not cite to

any authority permitting third-party discovery to enforce a judgment without

demonstrating *any* connection between the subpoena target and the debtor or its

assets, and there is none.  The scope of third party discovery to enforce judgments

is "not unlimited" and "must be kept pertinent to the goal of discovering concealed

assets of the judgment debtor[.]"  *Itochu Int'l, Inc. v. Devon Robotics, LLC*, 303

F.R.D. 229, 232 (E.D. Pa. 2014).  Courts should be on guard to prevent their

subpoena power from "becom[ing] a means of harassment of the debtor or third

persons."  *Id*.

Petitioners not only concede no direct connection to SpaceX, they do not

even provide support for their alleged *indirect* connection (four degrees removed).

Before subpoenaing third parties, Petitioners need to provide evidence indicating

financial transactions somehow connected to the debtor, or at least be able to

articulate plausible facts that might support such a connection.  But Petitioners point only to Ghalam's website that states Ghalam is part owned by Airbus as well as a corporation and a Kazakh government ministry (as 0.5% owner).  (Sun Decl. ¶ 9; Ex. E.)  If this information is true, what it actually shows is that Ghalam is an independent corporate entity, *not the alter ego of the ROK.  Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities," and this rule applies to alleged instrumentalities of foreign sovereigns).

Petitioners' only argument in support of relevance is the conclusory statement that the demanded information "will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no 'commercial activity' in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide."  But Petitioners already acknowledged that SpaceX does not have responsive documents.  (Sun Decl. Ex. M.)  They did not have any legitimate reason to think otherwise when they served the subpoenas.  Petitioners need to offer more than conclusory statements about relevance before burdening third parties with a subpoena response.

Petitioners' only argument in support of relevance is the conclusory statement that the demanded information "will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no 'commercial activity' in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide."  But Petitioners already acknowledged that SpaceX does not have responsive documents.  (Sun Decl. Ex. M.)  They did not have any legitimate reason to think otherwise when they served the subpoenas.  Petitioners need to offer more than conclusory statements about relevance before burdening third parties with a subpoena response.

**Stay Pending D.D.C. Ruling.** For the reasons stated in SpaceX's response to Request 1, if the Court does not simply quash the Amended Subpoenas immediately, it should stay ruling on the current motion pending a ruling from the D.D.C. Court on the Stati Parties' motion to compel largely identical documents and information from SpaceFlight.

**Confidentiality.** For the reasons stated in SpaceX's response to Request 7, infra, if SpaceX were obligated to produce documents responsive to this request, they would very likely include confidential information, and SpaceX will not produce them in the absence of an acceptable confidentiality order.

**Sanctions (Fed. R. Civ. P. 45(d)(1)).** For the reasons stated in SpaceX's response to Request 7, infra, Petitioners should be sanctioned under Federal Rule of Civil Procedure 45(d)(1) for this abuse of the Court's subpoena power.

**REQUEST No. 4**

All documents and communications, and deposition testimony, regarding any funds or other Asset placed in escrow or trust in connection with the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in the Exhibit 1 attached to the Amended Subpoenas), including such documents and communications sufficient to identify the Financial Institution where such funds or Asset are held.

**SPACEX'S RESPONSE TO REQUEST No. 4:**

SpaceX incorporates its General Responses and Objections stated above and further objects to this Request on the following grounds and to the extent that: (1) it vague and ambiguous, including without limitation in its definitions of Asset and Kazakh Satellite and reference to Exhibit 1, which appears to be an incomplete copy of an article published in "Caspian News"; (2) it is overly broad and unduly burdensome; and (3) it seeks confidential business information that SpaceX will

29

not produce in the absence of a protective order. Subject to and without waiving the foregoing objections, SpaceX responds as follows: following a reasonable, inquiry and/or diligent search of the files likely to contain responsive documents, SpaceX has not located any record of any funds or other valuable assets placed in escrow by SpaceX or the Republic of Kazakhstan related to SpaceX's launch or operation of any space satellite belonging to the Republic of Kazakhstan.

### 1. Stati Group's Position

SpaceX's response with respect to this request is incomplete and its objections are unwarranted.  This request seeks documents and information concerning any funds or Asset placed in escrow or trust in connection with the past or future launch or operation of any Kazakh Satellite, without regard to the identity of the person or entity that placed such funds/assets in escrow or trust.

Accordingly, Petitioners request an order directing SpaceX to produce all documents and communications, and deposition testimony, regarding any funds or other Asset placed in escrow or trust in connection with the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to "KazSciSat-1" and "KazSTAT," by any person or entity, including, without limitation, SpaceFlight or Ghalam), including such documents and communications sufficient to identify the Financial Institution where such funds or Asset are held.

The documents and information requested by Request No. 4 are relevant because they will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide.

SpaceX has simply failed to show how Petitioners' requests are "vague and ambiguous," and it has not explained how the terms "Asset," and "Kazakh Satellite" are so.

1  SpaceX has also failed to show how Petitioners' requests are "overly broad
2  or unduly burdensome."  During the meet and confer sessions, Petitioners
3  repeatedly expressed willingness to refine and narrow the scope of the Amended
4  Subpoenas, as well as the search terms used by SpaceX to locate potentially-
5  responsive ESI.  Sun Decl. ¶ 20 & Exs., M, O.  The same offer was made in
6  Petitioners' October 25 Letter.  SpaceX has given Petitioners no indication of the
7  volume of documents that would be responsive to the Amended Subpoenas, or how
8  much it would cost to review or produce such documents.  Nor can SpaceX, a
9  company whose equity value rose to more than U.S. $33 billion as of May 2019
10  (*Id.* Ex. N), credibly claim that it lacks the resources to comply with the Amended
11  Subpoenas.  SpaceX has not even attempted to show that the burden of complying
12  with the Amended Subpoenas outweighs the likely benefit of such discovery to
13  Petitioners, who have not been able to satisfy a more than U.S. $500 million
14  judgment against the ROK for over six years.

15  Petitioners have previously expressed their willingness, and remain willing,
16  to enter into a reasonable confidentiality agreement or protective order prior to any
17  document production or deposition from SpaceX.  *Id.* Exs. I, O.

18  **2.    SpaceX's Position**

19  Petitioners demand all "documents and communications regarding any funds
20  or other Asset placed in escrow or trust in connection with the past (since January
21  1, 2016) or future launch or operation of any Kazakh Satellite[.]"  (Sun Decl. Ex. F
22  at 3.)  The motion to compel a response should be denied.

23  **There Are No Responsive Documents.** First, SpaceX has already informed
24  Petitioners that it has never had information about any assets of Kazakhstan (even
25  as overbroadly defined in the Amended Subpoenas) placed in trust in connection
26  with the launch or operation of any Kazakh Satellite, and that SpaceX therefore
27  does not have documents responsive to this request.  Petitioners "accept[ed] your

28

31

representations that SpaceX does not have any documents or information responsive to requests 1-5," but inexplicably moves to compel a response anyway. (Sun Decl. Ex. M; *see also* Cardaci Decl. ¶¶ 4-5.)

**Irrelevant.** Leaving aside that SpaceX has no responsive documents (Sun Decl. Ex. M.), this request is misguided because it does not seek documents or information that are relevant to the Stati Parties' efforts to satisfy their judgment against the ROK.

The action underlying the Amended Subpoenas is a collection action against a sovereign nation entitled to broad sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1602, *et seq*. Specifically, Petitioners may enforce their judgment only against property of the ROK "in the United States [and] used for a commercial activity in the United States." 28 U.S.C. § 1610(a). The Stati Parties have not even attempted to identify property alleged to be in the United States, much less property being used here for commercial activity here. They have not shown the satellites were ever used for commercial activity— they appear to be scientific in nature—and in any event they cannot dispute that the satellites are no longer in the United States. Moreover, SpaceX had no financial relationship with the ROK and no money has been exchanged or is owed between them, as Petitioners' counsel acknowledges. (Sun Decl. Ex. M.) Discovery into non-attachable foreign assets is impermissible. *See EM Ltd. v. Republic of Argentina*, 473 F. 3d 463, 486 (2007) (denying discovery into immune assets of a foreign sovereign debtor).

Nor do Petitioners allege any direct connection between SpaceX and the debtor that would support third-party discovery. Petitioners' convoluted theory is that Seattle-based SpaceFlight contracted with SpaceX to launch a payload holding satellites for more than 30 other customers; SpaceFlight contracted with a company called Ghalam LLP to include three small satellites in the 64-satellite stack;

32

Ghalam is jointly owned by Airbus (the European aerospace manufacturer), another corporate entity whose shares are allegedly owned by the Kazakh government, and the Kazakh Ministry of Digital Development (as a 0.5% owner); and that through the ROK's purely speculative control of the latter two entities, Ghalam may somehow be the ROK's alter ego. In other words, Petitioners admit there is no direct connection between SpaceX and ROK. Petitioners do not cite to any authority permitting third-party discovery to enforce a judgment without demonstrating *any* connection between the subpoena target and the debtor or its assets, and there is none. The scope of third party discovery to enforce judgments is "not unlimited" and "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor[.]" *Itochu Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014). Courts should be on guard to prevent their subpoena power from "becom[ing] a means of harassment of the debtor or third persons." *Id*.

Petitioners not only concede no direct connection to SpaceX, they do not even provide support for their alleged *indirect* connection (four degrees removed). Before subpoenaing third parties, Petitioners need to provide evidence indicating financial transactions somehow connected to the debtor, or at least be able to articulate plausible facts that might support such a connection. But Petitioners point only to Ghalam's website that states Ghalam is part owned by Airbus as well as a corporation and a Kazakh government ministry (as 0.5% owner). (Sun Decl. ¶ 9; Ex. E.) If this information is true, what it actually shows is that Ghalam is an independent corporate entity, *not the alter ego of the ROK. Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities," and this rule applies to alleged instrumentalities of foreign sovereigns).

33

1    Petitioners' only argument in support of relevance is the conclusory

2    statement that the demanded information "will: (i) allow Petitioners to test the

3    veracity of the ROK's claim that it has engaged in no 'commercial activity' in the

4    United States; and (ii) aid Petitioners in their efforts to enforce the Award and the

5    Judgment world-wide."  But Petitioners already acknowledged that SpaceX does

6    not have responsive documents.  (Sun Decl. Ex. M.)  They did not have any

7    legitimate reason to think otherwise when they served the subpoenas.  Petitioners

8    need to offer more than conclusory statements about relevance before burdening

9    third parties with a subpoena response.

10    Petitioners' only argument in support of relevance is the conclusory

11    statement that the demanded information "will: (i) allow Petitioners to test the

12    veracity of the ROK's claim that it has engaged in no 'commercial activity' in the

13    United States; and (ii) aid Petitioners in their efforts to enforce the Award and the

14    Judgment world-wide."  But Petitioners already acknowledged that SpaceX does

15    not have responsive documents.  (Sun Decl. Ex. M.)  They did not have any

16    legitimate reason to think otherwise when they served the subpoenas.  Petitioners

17    need to offer more than conclusory statements about relevance before burdening

18    third parties with a subpoena response.

19    **Stay Pending D.D.C. Ruling.**  For the reasons stated in SpaceX's response

20    to Request 1, if the Court does not simply quash the Amended Subpoenas

21    immediately, it should stay ruling on the current motion pending a ruling from the

22    D.D.C. Court on the Stati Parties' motion to compel largely identical documents

23    and information from SpaceFlight.

24    **Confidentiality.**  For the reasons stated in SpaceX's response to Request 7,

25    infra, if SpaceX were obligated to produce documents responsive to this request,

26    they would very likely include confidential information, and SpaceX will not

27    produce them in the absence of an acceptable confidentiality order.

28

34

**Sanctions (Fed. R. Civ. P. 45(d)(1)).** For the reasons stated in SpaceX's response to Request 7, infra, Petitioners should be sanctioned under Federal Rule of Civil Procedure 45(d)(1) for this abuse of the Court's subpoena power.

**REQUEST No. 5**

All documents and communications, and deposition testimony, regarding any Debt owed by SpaceX to Kazakhstan, either currently or in the future by virtue of a recurring obligation, relating to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite, including but not limited to those referenced in Exhibit 1 attached to the Amended Subpoenas.

**SPACEX'S RESPONSE TO REQUEST No. 5:**

SpaceX incorporates its General Responses and Objections stated above and further objects to this Request on the following grounds and to the extent that: (1) it vague and ambiguous, including without limitation in its definitions of You, Debt, Kazakhstan, and Kazakh Satellite and reference to Exhibit 1, which appears to be an incomplete copy of an article published in "Caspian News"; (2) it is overly broad and unduly burdensome; and (3) it seeks confidential business information that SpaceX will not produce in the absence of a protective order. Subject to and without waiving the foregoing objections, SpaceX responds as follows: following a reasonable, inquiry and/or diligent search of the files likely to contain responsive documents, SpaceX has not located any record the Republic of Kazakhstan owing any financial obligation to SpaceX related to SpaceX's launch or operation of any space satellite belonging to the Republic of Kazakhstan.

**1.      Stati Group's Position**

SpaceX's response with respect to this request is incomplete and its objections are unwarranted.  The definition of "Kazakhstan" in the Amended

35

Subpoenas includes not only "the Republic of Kazakhstan," but also agents acting on behalf of ROK, including, without limitation, Ghalam.

Accordingly, Petitioners request an order directing SpaceX to produce all documents and communications, and deposition testimony, regarding any Debt owed by SpaceX to Kazakhstan, either currently or in the future by virtue of a recurring obligation, relating to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to "KazSciSat-1" and "KazSTAT," whether owed to any agent acting on behalf of the ROK, such as Ghalam.)

The documents and information requested by Request No. 5 are relevant because they will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide.

SpaceX has failed to show how Petitioners' requests are "vague and ambiguous," and it has not explained how the terms "You," "Debt," "Kazakhstan," and "Kazakh Satellite" are so.

SpaceX has also failed to show how Petitioners' requests are "overly broad or unduly burdensome."  During the meet and confer sessions, Petitioners repeatedly expressed willingness to refine and narrow the Amended Subpoenas, as well as the search terms used by SpaceX to locate potentially-responsive ESI.  Sun Decl. ¶ 20 & Exs., M, O.  The same offer was made in Petitioners' October 25 Letter.  SpaceX has given Petitioners no indication of the volume of documents that would be responsive to the Amended Subpoenas, or how much it would cost to review or produce such documents.  Nor can SpaceX, a company whose equity value rose to more than U.S. $33 billion as of May 2019 (*Id*. Ex. N), credibly claim that it lacks the resources to comply with the Amended Subpoenas.  SpaceX has not even attempted to show that the burden of complying with the Amended Subpoenas

36

outweighs the likely benefit of such discovery to Petitioners, who have not been able to satisfy a more than U.S. $500 million judgment against the ROK for over six years.

Petitioners have previously expressed their willingness, and remain willing, to enter into a reasonable confidentiality agreement or protective order prior to any document production or deposition from SpaceX.  *Id.* Exs. I, O.

## 2.   SpaceX's Position

Petitioners demand all "documents and communications regarding any Debt owed by [SpaceX] to Kazakhstan, either currently or in the future by virtue of a recurring obligation, relating to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite[.]"  (Sun Decl. Ex. F at 3.)  The motion to compel a response should be denied.

**There Are No Responsive Documents.** First, SpaceX has already informed Petitioners that SpaceX does not now and has not in the past owed any debt to Kazakhstan (even as overbroadly defined in the Amended Subpoenas), and that SpaceX therefore does not have documents responsive to this request.  Petitioners "accept[ed] your representations that SpaceX does not have any documents or information responsive to requests 1-5," but inexplicably moves to compel a response anyway.  (Sun Decl. Ex. M; *see also* Cardaci Decl. ¶¶ 4-5.)

**Irrelevant.**  Leaving aside that SpaceX has no responsive documents (Sun Decl. Ex. M.), this request is misguided because it does not seek documents or information that are relevant to the Stati Parties' efforts to satisfy their judgment against the ROK.

The action underlying the Amended Subpoenas is a collection action against a sovereign nation entitled to broad sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA").  28 U.S.C. § 1602, *et seq.*  Specifically, Petitioners may enforce their judgment only against property of the ROK "in the

United States [and] used for a commercial activity in the United States." 28 U.S.C. § 1610(a). The Stati Parties have not even attempted to identify property alleged to be in the United States, much less property being used here for commercial activity here. They have not shown the satellites were ever used for commercial activity— they appear to be scientific in nature—and in any event they cannot dispute that the satellites are no longer in the United States. Moreover, SpaceX had no financial relationship with the ROK and no money has been exchanged or is owed between them, as Petitioners' counsel acknowledges. (Sun Decl. Ex. M.) Discovery into non-attachable foreign assets is impermissible. *See EM Ltd. v. Republic of Argentina*, 473 F. 3d 463, 486 (2007) (denying discovery into immune assets of a foreign sovereign debtor).

Nor do Petitioners allege any direct connection between SpaceX and the debtor that would support third-party discovery. Petitioners' convoluted theory is that Seattle-based SpaceFlight contracted with SpaceX to launch a payload holding satellites for more than 30 other customers; SpaceFlight contracted with a company called Ghalam LLP to include three small satellites in the 64-satellite stack; Ghalam is jointly owned by Airbus (the European aerospace manufacturer), another corporate entity whose shares are allegedly owned by the Kazakh government, and the Kazakh Ministry of Digital Development (as a 0.5% owner); and that through the ROK's purely speculative control of the latter two entities, Ghalam may somehow be the ROK's alter ego. In other words, Petitioners admit there is no direct connection between SpaceX and ROK. Petitioners do not cite to any authority permitting third-party discovery to enforce a judgment without demonstrating *any* connection between the subpoena target and the debtor or its assets, and there is none. The scope of third party discovery to enforce judgments is "not unlimited" and "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor[.]" *Itochu Int'l, Inc. v. Devon Robotics, LLC*, 303

F.R.D. 229, 232 (E.D. Pa. 2014).  Courts should be on guard to prevent their subpoena power from "becom[ing] a means of harassment of the debtor or third persons." *Id*.

Petitioners not only concede no direct connection to SpaceX, they do not even provide support for their alleged *indirect* connection (four degrees removed).  Before subpoenaing third parties, Petitioners need to provide evidence indicating financial transactions somehow connected to the debtor, or at least be able to articulate plausible facts that might support such a connection.  But Petitioners point only to Ghalam's website that states Ghalam is part owned by Airbus as well as a corporation and a Kazakh government ministry (as 0.5% owner).  (Sun Decl. ¶ 9; Ex. E.)  If this information is true, what it actually shows is that Ghalam is an independent corporate entity, *not the alter ego of the ROK*.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities," and this rule applies to alleged instrumentalities of foreign sovereigns).

Petitioners' only argument in support of relevance is the conclusory statement that the demanded information "will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no 'commercial activity' in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide."  But Petitioners already acknowledged that SpaceX doesn't have responsive documents.  (Sun Decl. Ex. M.)  They did not have any legitimate reason to think otherwise when they served the subpoenas.  Petitioners need to offer more than conclusory statements about relevance before burdening third parties with a subpoena response.

Petitioners' only argument in support of relevance is the conclusory statement that the demanded information "will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no 'commercial activity' in the

39

United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide." But Petitioners already acknowledged that SpaceX does not have responsive documents. (Sun Decl. Ex. M.) They did not have any legitimate reason to think otherwise when they served the subpoenas. Petitioners need to offer more than conclusory statements about relevance before burdening third parties with a subpoena response.

**Stay Pending D.D.C. Ruling.** For the reasons stated in section II.A., if the Court does not simply quash the Amended Subpoenas immediately, it should stay ruling on the current motion pending a ruling from the D.D.C. Court on the Stati Parties' motion to compel largely identical documents and information from SpaceFlight.

**Confidentiality.** For the reasons stated in SpaceX's response to Request 7, infra, if SpaceX were obligated to produce documents responsive to this request, they would very likely include confidential information, and SpaceX will not produce them in the absence of an acceptable confidentiality order.

**Sanctions (Fed. R. Civ. P. 45(d)(1)).** For the reasons stated in SpaceX's response to Request 7, infra, Petitioners should be sanctioned under Federal Rule of Civil Procedure 45(d)(1) for this abuse of the Court's subpoena power.

**REQUEST No. 6**

All communications between SpaceX and Kazakhstan, and deposition testimony concerning the same.

**SPACEX'S RESPONSE TO REQUEST No. 6:**

SpaceX incorporates its General Responses and Objections stated above and further objects to this Request on the following grounds and to the extent that: (1) it vague and ambiguous, including without limitation in its definitions of You and Kazakhstan; (2) it is overly broad and unduly burdensome; (3) it seeks confidential

business information that SpaceX will not produce in the absence of a protective order; and (4) it seeks it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. SpaceX is willing to meet and confer regarding this request.

## 1.    Stati Group's Position

SpaceX's objections to this request are unwarranted.  Accordingly, Petitioners request an order directing SpaceX to produce all communications between SpaceX and the ROK (or its agents), and deposition testimony concerning the same.

The documents and information requested by Request No. 6 are relevant because they will: (i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide.

SpaceX has simply failed to show how Petitioners' requests are "vague and ambiguous," and it has not explained how the terms "You" and "Kazakhstan" are so.

SpaceX has also failed to show how Petitioners' requests are "overly broad or unduly burdensome," especially in light of numerous discussions where counsel for SpaceX suggested that SpaceX has had only limited communications with ROK (Sun Decl. ¶¶ 8, 17-18).  It is unclear whether SpaceX's suggestion in that regard was based upon a reasonable search of its electronic and hard copy records.  To the extent that a reasonable search has not yet been conducted, and an ESI search returns an outsized number of results, Petitioners remain willing to work with SpaceX to refine those search terms in order to reduce the number of potentially responsive documents.

Indeed, during the meet and confer sessions, Petitioners similarly repeatedly expressed a willingness to refine and narrow the Amended Subpoenas, as well as

the search terms used by SpaceX to locate potentially-responsive ESI.  Sun Decl. ¶ 20 & Exs., M, O.  The same offer was made in Petitioners' October 25 Letter. SpaceX has given Petitioners no indication of the volume of documents that would be responsive to the Amended Subpoenas, or how much it would cost to review or produce such documents.  Nor can SpaceX, a company whose equity value rose to more than U.S. $33 billion as of May 2019 (*Id.* Ex. N), credibly claim that it lacks the resources to comply with the Amended Subpoenas.  SpaceX has not even attempted to show that the burden of complying with the Amended Subpoenas outweighs the likely benefit of such discovery to Petitioners, who have not been able to satisfy a more than U.S. $500 million judgment against the ROK for over six years.

Petitioners have previously expressed their willingness, and remain willing, to enter into a reasonable confidentiality agreement or protective order prior to any document production or deposition from SpaceX.  *Id.* Exs. I, O.

### 2.    SpaceX's Position

**Relevance.**  Request 6 asks for "[a]ll communications between SpaceX and Kazakhstan" and related deposition testimony.  There is no subject matter limitation.  SpaceX has already informed Petitioners that the only potentially responsive documents in their possession are communications where SpaceX discussed the possibility of providing launch services to potential customers in Kazakhstan.  (Cardaci Decl. ¶¶ 7-8.)  These speculative business development discussions have never resulted in a contractual or financial arrangement of any kind.[8]  (*Id.*)  The motion never explains how these contacts could conceivably be relevant to Petitioners' collection efforts.  If Petitioners are right that all contacts

---

[8]  This is not surprising. SpaceX launches from Florida and California while Russia maintains its primary launch facility in Kazakhstan.  If the three tiny cubesats (each weighing a few pounds) on the SSO Mission really were ROK satellites, it would be the first time to SpaceX's knowledge that Russia has not provided launch services for Kazakhstan.

1    with the debtor regardless of subject matter are potentially relevant, then every

2    person or entity interacting with Kazakhstan (or its vaguely defined

3    instrumentalities) would be subject to Petitioners' subpoena.  That is clearly not the

4    law.

5         The request is further irrelevant because the action underlying the Amended

6    Subpoenas is a collection action against a sovereign nation entitled to broad

7    sovereign immunity under the FSIA.  28 U.S.C. § 1602, *et seq*.  Specifically,

8    Petitioners may enforce their judgment only against property of the ROK "in the

9    United States [and] used for a commercial activity in the United States."  28 U.S.C.

10   § 1610(a).  The Stati Parties have not even attempted to identify property alleged to

11   be in the United States, much less property being used here for commercial activity

12   here.  They have not shown the satellites were ever used for commercial activity—

13   they appear to be scientific in nature—and in any event they cannot dispute that the

14   satellites are no longer in the United States.  Moreover, SpaceX had no financial

15   relationship with the ROK and no money has been exchanged or is owed between

16   them, as Petitioners' counsel acknowledges.  (Sun Decl. Ex. M.)  Discovery into

17   non-attachable foreign assets is impermissible.  *See EM Ltd. v. Republic of*

18   *Argentina*, 473 F. 3d 463, 486 (2007) (denying discovery into immune assets of a

19   foreign sovereign debtor).

20        The scope of third-party discovery to enforce judgments is "not unlimited"

21   and "must be kept pertinent to the goal of discovering concealed assets of the

22   judgment debtor[.]"  *Itochu Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229,

23   232 (E.D. Pa. 2014).  Courts should be on guard to prevent their subpoena power

24   from "becom[ing] a means of harassment of the debtor or third persons."  *Id*.

25   Petitioners concede that relevance is guided by "common sense," but nonsensically

26   demand production of documents that could not conceivably help them locate or

27   attach assets of the ROK.  *Dale Evans Parkway 2012 v. Nat'l Fire & Marine Ins.*

28

43

*Co.*, No. ED CV 15-979-JGB (SPx), 2016 U.S. Dist. LEXIS 187094, at *8-9 (C.D. Cal. Oct. 27, 2016).  Petitioners served this request to harass SpaceX; it should be quashed.

Petitioners' only relevance argument is to repeat in the same conclusory terms that the information will "(i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide."  But Petitioners fail to explain why this is true—i.e., why SpaceX's business development discussions that did not result in financial or contractual arrangements would help Petitioners enforce their judgment.  Certainly discussions that did not lead to an agreement or financial arrangement cannot assist Petitioners' efforts.  Petitioners have never articulated a basis for their conclusory statement that this information has any conceivable relevance to enforcement.

**Overbroad.**  Petitioners demand all communications between Kazakhstan and SpaceX without any subject matter limitation.  This is abusively overbroad. The scope of discovery is not unlimited.  *Itochu Int'l*, 303 F.R.D. at 232.  "Asset discovery should be tailored to the specific purpose of enabling the judgment creditor to discover assets upon which it can execute the judgment" and must not be allowed to "devolve into a fishing expedition for irrelevant or cumulative information which does not advance that purpose."  *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012).  Petitioners' shotgun approach is not sufficiently tailored to potentially relevant information and should be quashed.

**Undue Burden.**  Given the lack of possible relevance of any resulting communications, responding to this request would place a considerable burden on SpaceX.  SpaceX's outreach to market its services has nothing to do with Petitioners' collections efforts, so even a modest burden would be unjustified. (Sun

44

Decl. ¶ 20, Ex. M.)  Yet looking for all communications between Kazakhstan and SpaceX would in fact require a time consuming search through emails of approximately fifteen to twenty people in the sales department and in technical groups supporting sales.[9]  (Cardaci Decl. ¶ 15.)

Petitioners' claim that search terms would make their overbroad requests somehow proper is incorrect.  The subpoenas do not target relevant or discoverable information, so no response is called for.  "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of" Rule 45(d)(1).  *CareToLive v. von Eschenback*, No. 2:07-cv-729, 2008 WL 552431, at 3 (S.D. Ohio Feb. 26, 2008).

**Confidentiality.**  For the reasons stated in SpaceX's response to Request 7, infra, if SpaceX were obligated to produce documents responsive to this request, they would very likely include confidential information, and SpaceX will not produce them in the absence of an acceptable confidentiality order.

**Sanctions (Fed. R. Civ. P. 45(d)(1)).**  For the reasons stated in SpaceX's response to Request 7, infra, Petitioners should be sanctioned under Federal Rule of Civil Procedure 45(d)(1) for this abuse of the Court's subpoena power.

**REQUEST No. 7**

All communications between SpaceX and any Person related to the past (since January 1, 2016) launch or operation of any Kazakh Satellite, including but not limited to those referenced in Exhibit 1 attached to the Amended Subpoenas, and deposition testimony concerning the same.

---

[9]  Any inference that SpaceX should have to bear the burden of responding to an overbroad and irrelevant subpoena because of its alleged enterprise value is improper.  The same law applies to all parties, regardless of their financial means.  This includes Petitioners, who are not entitled to harass third parties with irrelevant subpoenas just because they can afford to have highly paid lawyers scour the globe for anyone even remotely linked to Kazakhstan.

45

1

**SPACEX'S RESPONSE TO REQUEST No. 7:**

2

SpaceX incorporates its General Responses and Objections stated above and

3

further objects to this Request on the following grounds and to the extent that: (1)

4

it vague and ambiguous, including without limitation in its definitions of You,

5

Person, and Kazakh Satellite and reference to Exhibit 1, which appears to be an

6

incomplete copy of an article published in "Caspian News"; (2) it is overly broad

7

and unduly burdensome; (3) it seeks confidential business information that SpaceX

8

will not produce in the absence of a protective order; and (4) it seeks it seeks

9

documents that are irrelevant and not reasonably calculated to lead to the discovery

10

of admissible evidence. SpaceX is willing to meet and confer regarding this

11

request.

12

**1.     Stati Group's Position**

13

SpaceX's objections to this request are unwarranted. Accordingly,

14

Petitioners request an order directing SpaceX to produce all communications

15

between SpaceX and any Person related to the past (since January 1, 2016) launch

16

or operation of any Kazakh Satellite, including but not limited to "KazSciSat-1"

17

and "KazSTAT", and deposition testimony concerning the same.  For the

18

avoidance of doubt, Petitioners consider Spaceflight, Ghalam, and the United

19

States Government or its agencies (to the extent such communications exist in

20

connection with licenses or authorizations related to any Kazakh Satellite) to fall

21

within the definition of "Person" in the Amended Subpoenas.

22

The documents and information requested by Request No. 7 are relevant

23

because they will: (i) allow Petitioners to test the veracity of the ROK's claim that

24

it has engaged in no "commercial activity" in the United States; and (ii) aid

25

Petitioners in their efforts to enforce the Award and the Judgment world-wide.

26

27

28

1    SpaceX has simply failed to show how Petitioners' requests are "vague and
2    ambiguous," and it has not explained how the terms "You," "Person" and "Kazakh
3    Satellite" are so.

4    SpaceX has also failed to show how Petitioners' requests are "overly broad or
5    unduly burdensome."  SpaceX has provided no specific details concerning, *inter*
6    *alia*, the volume of records that would be responsive to the Amended Subpoenas, or
7    how much it would cost to review or produce such documents.  Moreover, it remains
8    unclear whether SpaceX's assertion of undue burden is based upon a reasonable
9    search of SpaceX's electronic and hard copy records.  During the meet and confer
10   sessions, Petitioners repeatedly expressed a willingness to refine and narrow the
11   Amended Subpoenas, as well as the search terms used by SpaceX to locate
12   potentially-responsive ESI.  Sun Decl. ¶ 20 & Exs., M, O.  The same offer was made
13   in Petitioners' October 25 Letter.  Nor can SpaceX, a company whose equity value
14   rose to more than U.S. $33 billion as of May 2019 (*Id*. Ex. N), credibly claim that it
15   lacks the resources to comply with the Amended Subpoenas.  SpaceX has not even
16   attempted to show that the burden of complying with the Amended Subpoenas
17   outweighs the likely benefit of such discovery to Petitioners, who have not been able
18   to satisfy a more than U.S. $500 million judgment against the ROK for over six
19   years.

20   Petitioners have previously expressed their willingness, and remain willing,
21   to enter into a reasonable confidentiality agreement or protective order prior to any
22   document production or deposition from SpaceX.  *Id.* Exs. I, O.

23   **2.    SpaceX's Position**

24   **Relevance.**  Request 7 asks for "All communications between [SpaceX] and
25   any Person related to the past (since January 1, 2016) launch or operation of any
26   Kazakh Satellite" and deposition testimony on this topic.  Petitioners' motion
27   makes clear that it interprets "Person" broadly to include any type of entity,

28

47

Case 2:20-mc-00023  Document 1-1  Filed 03/09/20  Page 49 of 59  Page ID #:52

including "the United States Government or its agencies." As drafted, Request 7 would require SpaceX to search for, compile and produce every communication in its possession, custody or control related to the SSO Mission. Given that hundreds, possibly thousands, of SpaceX employees likely spent tens of thousands hours on the complex, multi-year effort that went into performing the SSO Mission, it is not even certain that responding to Request 7 would be technically possible, but to the extent it is, it would involve hundreds, possibly thousands, of hours of work. (Cardaci Decl. ¶ 16.) It is also unlikely that more than a small handful of the tens of thousands of communications related to the SSO Mission would have even the slightest connection to Kazakhstan, and it there is next to no possibility that a single one of them would assist Petitioners in their quest for yet more attachable Kazakh assets. The scope of third-party discovery to enforce judgments is "not unlimited" and "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor[.]" *Itochu Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014).

Petitioners fail to explain how the demanded information is even conceivably relevant to enforcing the judgment. Petitioners admit SpaceX has never had any direct contractual or financial relationship with any purported Kazakh entity. Petitioners' counsel even acknowledged this fact *before* moving to compel. (Sun Decl. Ex. M.) Their indirect contact theory (i.e., that Kazakhstan owns a company, which is part owner of Ghalam, who contracted with SpaceFlight, who bought the SpaceX payload) is based on pure speculation. There is no basis to demand all communications relating to the launch of an alleged Kazakh Satellite when Petitioners know it will not lead to any information relevant to enforcing the judgment. Courts should be on guard to prevent their subpoena power from "becom[ing] a means of harassment of the debtor or third persons." *Itochu Int'l*, 303 F.R.D. at 232.

1   Petitioners counsel even admitted that they knew a response to the subpoena

2   would not identify assets of the ROK.  (Luskin Decl. ¶ 5; Ex. 5.)  They instead

3   wanted the names of Kazakh individuals involved with the launch, who they hoped

4   to interrogate about connections between Ghalam and the ROK.[10]  (*Id*.)  But

5   Petitioners conceded that they lacked "concrete facts" that Ghalam was acting as

6   the ROK's alter ego with respect to the launch, aside from a few newspaper articles

7   from the "Astana Times" and "Caspian News."  (Luskin Decl. ¶ 5; Ex. 5.)  And

8   Petitioners do not even allege that Ghalam engages in commercial activity in the

9   United States, has assets here, or other facts indicating that information about

10  contacts between Ghalam and the ROK would help enforce the judgment.

11  Without any facts to support their hope that someone connected to the

12  launch might have information that could, in turn, lead to information relevant to

13  enforcing the judgment, the subpoena is nothing more than a "fishing expedition

14  for irrelevant information" and must be quashed.  *E.I. DuPont de Nemours & Co.*

15  *v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012).

16  The request is also irrelevant because the action underlying the Amended

17  Subpoenas is a collection action against a sovereign nation entitled to broad

18  sovereign immunity under the FSIA.  28 U.S.C. § 1602, *et seq*.  Specifically,

19  Petitioners may enforce their judgment only against property of the ROK "in the

20  United States [and] used for a commercial activity in the United States."  28 U.S.C.

21  § 1610(a).  The Stati Parties have not even attempted to identify property alleged to

22  be in the United States, much less property being used here for commercial activity

23  here.  They have not shown the satellites were ever used for commercial activity—

24  they appear to be scientific in nature—and in any event they cannot dispute that the

25  satellites are no longer in the United States.  Moreover, SpaceX had no financial

26

27  [10] If this is the only information Petitioners wanted, one wonders why they do not simply ask for
these names if their true goals is not to harass.

28

relationship with the ROK and no money has been exchanged or is owed between them, as Petitioners' counsel acknowledges.  (Sun Decl. Ex. M.)  Discovery into non-attachable foreign assets is impermissible.  *See EM Ltd. v. Republic of Argentina*, 473 F. 3d 463, 486 (2007) (denying discovery into immune assets of a foreign sovereign debtor).

Petitioners' only relevance argument is to repeat the same conclusory statement that the information will "(i) allow Petitioners to test the veracity of the ROK's claim that it has engaged in no "commercial activity" in the United States; and (ii) aid Petitioners in their efforts to enforce the Award and the Judgment world-wide."  But Petitioners do not provide any rational explanation for how the requested documents would accomplish either goal.  There is no obvious connection between the (likely) thousands of communications that "relate to" a complicated endeavor like launching a rocket into space and Petitioners' attempt to collect the judgment.

**Overbroad.**  Petitioners' demand for all communications "related to" the "launch or operation of any Kazakh Satellite" is abusively overbroad.  A response would capture all communications between SpaceX and any person or entity about the 2018 launch, a complicated multi-year effort requiring the coordination of thousands of people.  Petitioners intend this request to be interpreted as broadly as possible: they explicitly demand communications between SpaceX and "the United States government or its agencies."

The scope of discovery is not unlimited.  *Itochu Int'l*, 303 F.R.D. at 232.  "Asset discovery should be tailored to the specific purpose of enabling the judgment creditor to discover assets upon which it can execute the judgment" and must not be allowed to "devolve into a fishing expedition for irrelevant or cumulative information which does not advance that purpose."  *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012).

None of the communications about the launch have any possible relevance to enforcing the judgment. Petitioners certainly do not articulate one. But a response would require the review of tens of thousands of irrelevant communications with government agencies, communications about the 61 other objects included in the SpaceFlight Mission, and countless other communications related to one of the most complicated endeavors mankind is capable of: constructing a rocket and launching it into space. (*See* Cardaci Decl. ¶ 16.)

**Undue Burden.** Responding to this request would place an unmanageable burden on SpaceX, without any countervailing benefit to Petitioners. Like any space launch, the SpaceFlight Mission was a complicated multi-year endeavor requiring the coordinated efforts of hundreds (likely thousands) of employees. (Cardaci Decl. ¶ 16.) The advertised price for SpaceX to perform a launch like the SSO Mission is $62,000,000. It involves the manufacture or refurbishment of a rocket, an extremely complex piece of equipment, the design of the mission and mission unique equipment, licensing and government approvals from the Federal Aviation Administration, Federal Communications Commission, the Air Force and Coast Guard, customer support, and an outside launch campaign, among myriad other things. (*Id.*) Petitioners have said they want all of this—including communications with "the United States government or its agencies"—for no articulable reason.

Responding to the Amended Subpoenas (particularly requests 6 and 7) as worded would involve searching potentially thousands of custodians. But there is no way to effectively identify and search for every possible custodian, so the search would almost certainly be incomplete. (Cardaci Decl. ¶¶ 15-16.) To the extent a search is possible, it would take hundreds—if not thousands—of hours to locate, compile, review, and produce responsive documents falling within this sweeping demand. (*Id.*) Almost none of this would have anything to do with

Kazakhstan, the Kazakh Satellites, or any party alleged to have any connection to the debtor (assuming the search even turns up responsive documents).  Most of what would relate to the Kazakh Satellites would involve technical minutia about the physical properties of the payload.  (*Id*.)  The estimated cost to search for these documents would easily run into the tens of thousands of dollars, not counting the expense of having outside counsel review the documents before production.  (*Id*. ¶¶ 17-20.)

Petitioners have not shown any countervailing benefit these efforts will achieve.  Their motion provides no explanation of how this expansive request for communications is reasonably likely to lead to relevant information.  Even if they did,  Petitioners have already attached over $6 billion in ROK assets to secure payment of their judgment.  (Luskin Decl. ¶¶ 2-3; Exs. 4-5.)  Petitioners' press office has also made public statements that ongoing enforcement proceedings "serves no purpose in light of the multi-billion-dollars of attachments in force in other jurisdictions."  (*Id*. ¶ 3; Ex. 5.)  Petitioners nevertheless seek to impose a tremendous burden on a third party that has nothing to do with their collection efforts.

Petitioners' claim that search terms would make their overbroad requests somehow proper is incorrect.  The subpoenas do not target relevant or discoverable information, so no response is called for.  "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of" Rule 45(d)(1).  *CareToLive v. von Eschenback*, No. 2:07-cv-729, 2008 WL 552431, at 3 (S.D. Ohio Feb. 26, 2008).  And the burden and time estimates provided *assume search terms*—a response to the sweeping request would impossible without them as a practical matter.  SpaceX would still have to run the terms against thousands of custodians and review all the resulting documents for confidentiality, privilege, trade secrets, etc.

1    **Confidentiality.**  Petitioners' expansive request is virtually certain to sweep
2  in confidential communications and documents that SpaceX will not produce
3  absent a protective order.  SpaceX is a leading commercial space launch service
4  provider operating in a fiercely competitive market.  It possesses extremely
5  sensitive and confidential information, including, without limitation, trade secrets
6  information, advanced rocket technology protected by law, confidential pricing
7  information, approach to marketing, technical specifications from customers, and
8  information subject to nondisclosure agreements.  Disclosure of this information
9  would be highly prejudicial to SpaceX's ability to compete, and raises potential
10  national security concerns.  The high probability that responding to the Amended
11  Subpoenas would include sensitive information of both SpaceX and other entities
12  warrants entry of a protective order.

13    **Sanctions (Fed. R. Civ. P. 45(d)(1)).**  The Stati Parties should be
14  sanctioned for their improper use of the subpoenas to harass third parties for
15  having ever come into contact with the ROK.  "A party or attorney responsible for
16  issuing and serving a subpoena must take reasonable steps to avoid imposing
17  undue burden or expense on a person subject to the subpoena."  FED. R. CIV. P.
18  45(d)(1).  Sanctions may include "loss of earnings and reasonable attorneys' fees."
19  *Id.*

20    Petitioners have acted unreasonably with respect to the subpoenas.
21  Petitioners served the subpoenas on third-party SpaceX without any knowledge of
22  a connection between it and the debtor.  It could have subpoenaed Ghalam first to
23  determine whether it was actually the debtor's alter ego or had collectible assets,
24  but did not try.  (Luskin Decl. ¶ 5.)  Even worse, when SpaceX told Petitioners
25  they had no commercial relationship or financial transactions with the ROK or any
26  other Kazakhstan entity—a fact Petitioners do not dispute (Sun Decl. Ex. M at
27  1.)—they served even broader subpoenas asking for new, vast categories of

28

information that had nothing to do with enforcing the judgment.  (*Id*. Ex. F.)  And Petitioners subpoenaed identical financial information from SpaceFlight, but have refused to let either subpoena play out before enforcing the other, creating needless duplication of efforts for the exact same information, not to mention the possibility for inconsistent rulings.  Meanwhile, Petitioners have already attached over $6 *billion* in Kazakh assets—12 times the original value of their judgment—and even acknowledged in connection with proceedings in England that "the case serves no purpose in light of the multi-billion-dollars of attachments in force in other jurisdictions."  (*Id*. ¶ 3; Ex. 5.)  The SpaceX subpoena should never have been issued.  "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of" Rule 45(d)(1).  *CareToLive v. von Eschenback*, No. 2:07-cv-729, 2008 WL 552431, at 3 (S.D. Ohio Feb. 26, 2008).

Petitioners also refused every reasonable proposal to lower the burden of responding, even when it should have been obvious that SpaceX had no documents or information relevant to enforcing the judgment.  Petitioners' counsel "accept[ed] that SpaceX does not have documents or information responsive to requests 1-5 [seeking financial information about the launch] of each of the [original] subpoenas" but then served new subpoenas adding two extremely broad requests that have nothing to do with enforcing the judgment.  (Sun Decl. Ex. M at 1.) When SpaceX proposed limiting one of those requests (No. 6), which broadly asked for "all communications" between SpaceX and Kazakhstan, to exclude "discussions [that] did not materialize into a contract," the Stati Parties rejected that commonsense limitation.  (*Id*. Ex. M.)  They never explained how communications that "did not materialize into a contract" could be relevant to enforcing the judgment.

54

Petitioners also refused to pause the subpoenas (or this motion) pending a decision on the SpaceFlight motion, another simple way to avoid unnecessary costs. Most recently, Petitioners' counsel refused to limit the subpoenas to documents showing financial transactions between SpaceX and Kazakhstan or Ghalam (the only entity involved with the launch which was even allegedly connected to the debtor). Petitioners insisted their subpoenas were broader than that, but were again unable to explain how any other information would be relevant to enforcing their judgment. (Luskin Decl. ¶ 5; Ex. 6.)

Petitioners' bullheaded pursuit of documents and information it either knows do not exist or that would be of no use to them reveals their true purpose in serving the subpoenas was to harass third parties so they will not do business with Kazakhstan. Sanctions are particularly appropriate where a party "issues a subpoena in bad faith [or] for an improper purpose[.]" *Legal Voice v. Stormans Inc.*, 738 F. 3d 1178, 1185 (9th Cir. 2013). Petitioners should be sanctioned in the amount SpaceX has incurred responding to Petitioners' abusive subpoenas and the estimated time to attend the hearing on this motion, which totals $26,000 (and growing).[11]  (Cardaci Decl. ¶ 21.)

## III.   CONCLUSION

### A.   Stati Group's Conclusion

Petitioners' Amended Subpoenas seek documents and information that are relevant to its efforts to enforce a more than U.S. $500 million Judgment and

---

[11]  If SpaceX is ordered to respond to any part of the Amended Subpoenas then Petitioners should be ordered to pay the cost to SpaceX of responding. FED. R. CIV. P. 45(d)(1). Such an order is warranted here to protect SpaceX's interest as a third party having nothing to do with Petitioners' collection efforts and to reflect that even Petitioners have recognized further court proceedings "serve[] no purpose" in light of their more than $6 billion in already-attached assets. (Luskin Decl. Ex. 5.) If Petitioners, an enormously wealthy Moldovan father and son and their wholly owned company, want to burden third parties with broad discovery to unnecessarily attach even more assets, justice requires they pay for it.

Award against the ROK.  SpaceX has acknowledged that it has documents and information responsive to Petitioners' discovery requests.  Moreover, SpaceX has not presented an adequate basis on which to sustain its absolute refusal to produce any such documents and testimony.  Accordingly, Petitioners respectfully ask that the Court issue an Order compelling SpaceX to produce documents and testimony pursuant to the Amended Subpoenas.

### B.    SpaceX's Conclusion

The Stati Parties had no reasonable basis to serve the subpoenas or move to compel, and should be sanctioned for their misconduct.  Petitioners are already well aware that SpaceX does not have any documents that could help it enforce the judgment.  It's motion to compel is just another step in its campaign to harass anyone coming into even remote contact with the debtor.  Petitioners have taken this misguided tactic too far.  The subpoenas should be quashed and SpaceX awarded its costs and attorneys' fees for having to respond to Petitioners' abusive conduct.

DATED: March 5, 2020.

/s/ Cheryl A. Sabnis
Cheryl A. Sabnis (State Bar No. 224323)
KING & SPALDING LLP
633 W 5th St Suite 1600
Los Angeles, CA 90071
213-443-4378 (Phone)
213-443-4310 (Fax)
csabnis@kslaw.com

James E. Berger (*pro hac vice forthcoming*)
Thomas C. Childs (*pro hac vice forthcoming*)
Charlene C. Sun (*pro hac vice forthcoming*)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036

56

212-556-2100 (Phone)
212-556-2222 (Fax)
jberger@kslaw.com
tchilds@kslaw.com
csun@kslaw.com

*Attorneys for Petitioners*

Dated:  March 6, 2020.                    PAYNE & FEARS LLP


_____

Scott O. Luskin
Randy Haj
PAYNE & FEARS LLP
200 N. Pacific Coast Hwy., Suite 825
El Segundo, CA 90245
Tel: 310-689-1750
Fax: 310-689-1755
sol@paynefears.com
rrh@paynefears.com

*Attorneys for SpaceX*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FILER'S ATTESTATION**

In accordance with Local Rule 5-4.3.4(a)(2)(i), the undersigned attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing of this Stipulation.


Dated: March  , 2020                    KING & SPALDING LLP


                                        By:_____

                                        Cheryl A. Sabnis (State Bar No. 224323)
                                        KING & SPALDING LLP
                                        633 W 5th St Suite 1600
                                        Los Angeles, CA 90071
                                        213-443-4378 (Phone)
                                        213-443-4310 (Fax)
                                        csabnis@kslaw.com

FILER'S ATTESTATION RE. PETITIONERS' MOTION TO COMPEL SPACEX'S COMPLIANCE WITH SUBPOENAS