# Exhibit C

Exhibit C - 12

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | | |
|---|---|---|
| ANATOLIE STATI, GABRIEL STATI, ASCOM GROUP, S.A., AND TERRA RAF TRANS TRAIDING LTD., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  14-cv-1638 (ABJ) (DAR) |
| REPUBLIC OF KAZAKHSTAN | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Space Exploration Technologies Corp.
c/o Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Appendix A

| Place:   King & Spalding LLP  633 West Fifth Street, Suite 1600  Los Angeles, CA 90071 | Date and Time:  August 30, 2019 5:00PM EDT |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/12/2019

|  *CLERK OF COURT* | OR | |
|---|---|---|
| _____  *Signature of Clerk or Deputy Clerk* | | _____  *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Anatolie Stati, Gabriel Stati, Ascom Group S.A., Terra Raf Trans Traiding Ltd.    , who issues or requests this subpoena, are:
James E. Berger, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, jberger@kslaw.com; 212-556-2202

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit C - 13

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   14-cv-1638 (ABJ) (DAR)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Exhibit C - 14

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit C - 15

# APPENDIX A

## DEFINITIONS

Whenever used herein, the following terms shall have the following meanings:

1. "**Asset**" means any tangible or intangible item of economic value located anywhere in the world in any form, including without limitation, and whether prepaid or deferred, any cash, income, securities, bank accounts, accounts receivable, gifts, trademarks, patents, copyrights, goodwill, personal property, or any interest in any real property, including in any leasehold, or any ownership, membership, credit or other interest in, whether direct or indirect or legal or equitable, or any power, control or discretion otherwise with respect to the disposition of, any asset of any person.

2. "**Kazakh Satellite**" refers to any satellite belonging to Kazakhstan, including but not limited to, the KazSciSat (or KazSaySat) satellite, KazSTSAT (or "KazistiSat") satellite, KazEOSat-2 satellite, or KazEOSat-3 satellite.

3. "**Communication**" means any transmittal of information in the form of facts, ideas, inquiries, or otherwise, located anywhere in the world.  A Document Request for "Communication(s)" calls for you to produce correspondence, telexes, telecopies, electronic mail, all attachments and enclosures thereto, computer tapes, discs, audio recordings, recordings of any other type in any medium of written or oral communications, phone logs, message logs, and notes and memoranda of, or referring or relating to, written or oral communications.

4. "**Debt**" means any money or other item of economic value owed to another person or entity, located anywhere in the world, including but not limited to accounts receivable, accounts payable, arrears, bills, checks, claims, credits, commercial paper, commitments, debentures, debits, dues, duties, encumbrances, executory contracts, guarantees, invoices, IOUs, liabilities, lines of credit, loans, mortgages, obligations, promissory and other notes, responsibilities, securities, suretyships, or vouchers.

5. "**Documents**" is synonymous in meaning and equal in scope with the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and includes, without limitation, all of the following located anywhere in the world: drafts; communications; correspondence; memoranda; records; reports; books; reports and/or summaries of conversations and/or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; summaries, reports and records of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or other notes; checks (front and back); check vouchers, check stubs or receipts; wire transfer requests, approvals, orders and confirmations; tape data sheets or data processing cards or discs; or any other written, printed, typewritten or otherwise recorded matter, however produced, reproduced, whether or not now in existence; any paper or writing including files, contracts, correspondence, telegrams, agreements, letters, notes, manuals, forms, brochures, drawings, and other data or data compilation of any sort, stored in any medium from which information can be obtained either directly or, if necessary, after

1

Exhibit C - 16

translation into a reasonably usable form; and electronically stored information, including without limitation any information that is generated, received, processed and recorded by computers and other electronic devices including without limitation any voicemails or other audio files, any video files and images and any text messages; internal or external web sites; output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, instant messages, and all miscellaneous media on which they reside and regardless whether said electronic data exists in an active file, an archive file, a deleted file, or file fragment; and activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as but not limited to any mobile device, or personal digital assistant.  A draft or non-identical copy of any Document, whether due to the addition of marginalia or other change, is a separate Document within the meaning of this term.  If the electronic and hard copy versions of any Document are separate Documents pursuant to this definition, then you must produce both the electronic and hard copy versions.

6. **"Financial Institution"** means any bank or trust company, including, without limitation, any person whose business or a principal part of whose business consists of any of the following:  borrowing or lending or investing money; administering or managing funds on behalf of other persons; acting as trustee in respect of funds of other persons; dealing in life assurance policies; providing financial services that involve the transfer or exchange of funds, including, without limitation, services relating to financial leasing, money transmissions, credit cards, debit cards, treasury certificates, bankers draft and other means of payment, financial guarantees, trading for account of others (in money market instruments, foreign exchange, interest and index instruments, transferable securities and futures), participation in securities issues, portfolio management, safekeeping of cash and liquid securities, investment related insurance and money changing; but not including the provision of financial services that consist solely of the provision of financial advice.

7. **"Kazakhstan"** refers to the Republic of Kazakhstan, as well as its government, ministries, divisions, departments, affiliates or subordinate organizations thereof, and any and all persons acting or purporting to act on behalf of any of them or the Republic of Kazakhstan.

8. **"Person"** includes all natural persons, and any business, legal or governmental entity, corporation, company, or association.

9. "**You**" means Space Exploration Technologies Corp. (or SpaceX), or its subsidiaries, affiliates, agents, representatives, or employees.

## <u>INSTRUCTIONS</u>

1. Unless otherwise noted, these document requests cover the period from January 1, 2016 through the present.

Exhibit C - 17

2.    Each request for documents extends to all documents in your possession, custody, or control, whether held by you or your past or present attorneys or agents and regardless of the location of the document(s).  You are required to produce documents that you have a legal right to obtain, documents that you have right to copy or have access to, and documents that you have placed in temporary possession, custody or control of a third party.

3.    These requests call for production of each requested document in its entirety, including all attachments presently or previously appended to each document, including, without limitation, working papers, routing slips, handwritten notes and similar materials (with or without notes or changes therein).

4.    The word "including" shall be construed without limitation wherever used herein.

5.    The past tenses of a verb used herein shall include the present tense, and the present tense shall include the past tense.

## **DOCUMENT REQUESTS**

1.    All contracts or agreements governing and/or related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite, including but not limited to those referenced in the attached Exhibit 1.

2.    All documents and communications regarding any payments made by Kazakhstan to You related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in the attached Exhibit 1), including such documents and communications sufficient to identify the Financial Institution and account from which and to which such payment was made.

3.    All documents and communications regarding any payments made by You to Kazakhstan related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in the attached Exhibit 1), including such documents and communications sufficient to identify the Financial Institution and account from which and to which such payment was made.

4.    All documents and communications regarding any funds or other Asset placed in escrow or trust in connection with the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in the attached Exhibit 1), including such documents and communications sufficient to identify the Financial Institution where such funds or Asset are held.

5.    All documents and communications regarding any Debt owed by You to Kazakhstan, either currently or in the future by virtue of a recurring obligation, relating to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite, including but not limited to those referenced in the attached Exhibit 1.

Exhibit C - 18

**EXHIBIT 1**

Exhibit C - 19



**Advertisement**



# Thanks To SpaceX, Kazakhstan Sends Space

By Nazrin Gadimova December 5, 2018

Exhibit C - 20



The rocket lifted off from Vandenberg Air Force Base on Monday carrying a tota
satellites representing 34 different organizations and 17 countries. / *SpaceX* / i

Kazakhstan has successfully launched two small satellites into Earth's orbit from
Barbara, California. The single orbital-class rocket known as Block 5 Falcon 9, de
SpaceX, was used to send the payload into space.

The rocket lifted off (https://www.spacex.com/webcast) from Vandenberg Air Fo
total of 64 miniature and small satellites representing (https://www.cnet.com/new
rocket-makes-history-with-third-launch-and-landing/) 34 different organizations an
satellites called KazSciSat and KazSTSAT went into orbits on December 3.

Exhibit C - 21

Monday's launch was the first time Kazakhstan used an American-made rocket c
Russian-made Proton launchers that were used in the past. Proton, which is cons
recognizable Russian rockets, has lost almost all of its customers; just a decade a
(https://www.rbc.ru/newspaper/2018/02/12/5a7d698d9a79472a28bf203e) ove

KazSciSat was designed by Kazakhstani developers and will study the ionospher
where terrestrial weather meets space weather. The second satellite, KazSTSAT,
will be used to take high-resolution aerial photographs around the globe and is sa
It weighs more than 100 kg and was developed by a joint team representing the
and British Surrey Satellite Technologies (SSTL).

> *"I am pleased to confirm that following separation from the launch vehicle a joint commissioning t*
> *successfully made contact with KazSTSAT and established that all initial systems checks are nom*
> *quoted (https://www.sstl.co.uk/media-hub/latest-news/2018/sstl-confirms-successful-launch-of-ka*
> *director at SSTL, as saying.*

KazSTSAT is the second satellite SSTL has worked on with Kazakhstan. KazEOS
satellite designed and manufactured by SSTL, was launched in 2012. Together w
expected to broaden the scope of information services provided to the region inc
connections and help satisfy the demand within Kazakhstan for broadband conn

Kazakhstan's very first satellite, KazSat-1, went into orbit for a 12-year mission afte
the Russian-made Proton-K launcher in 2006. Two years later malfunctions occu
satellite stopped responding to control signals. In mid-2009, KazSat-1 was transfe
(https://informburo.kz/stati/orbita-zahoroneniya-hronika-priklyucheniy-sputnikov-l
the graveyard orbit, since its broken condition was irreversible.

Launch costs and SpaceX's competitive pricing has shaken up the rocket launch
cheaper than those offered by Roscosmos. The launch cost (https://www.bloom
cost/) of the re-used Falcon 9, for example, is about $49 million versus Roscosm
launch the Proton M.

Because multiple satellites are launched in a single boost, the entire cost for a lau
country. Kazakhstan's Defense and Aerospace Minister, Beybut Atamkulov, said
government in Astana a little over $1 million.

> *"The cost of transportation to the United States is a part of a total of $1.3 million for the launch of t*
> *November according to reports by KazPravda (https://www.kazpravda.kz/news/tehnologii/atamk*
> *transportirovki-dvuh-kazahstanskih-sputnikov-dlya-zapuska-v-ssha).*

Exhibit C - 22

At the same time, officials in Kazakhstan are not completely shutting down doing
their neighbors to the north. Kazakhstani may still use Russia's Soyuz and Proton

Aset Nurkenov, a spokesperson for the defense and aerospace industry ministry
(https://www.interfax.ru/world/636632) the Astana's intent to launch satellites fro
cosmodrome and the world's first and largest operational space launch facility. D
Kazakhstani territory, the facility is operated by Russia.

With Monday's launch, SpaceX has broken its own record after using the rocket
row. Falcon 9 has since returned safely to Earth landing on the company's drone
Ocean.

Exhibit C - 23

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| ANATOLIE STATI, GABRIEL STATI, ASCOM GROUP, S.A., AND TERRA RAF TRANS TRAIDING LTD., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  14-cv-1638 (ABJ) (DAR) |
| REPUBLIC OF KAZAKHSTAN | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
                 Space Exploration Technologies Corp.
                 c/o Corporation Service Company
          2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:  See Appendix A

| | |
|---|---|
| Place:  King & Spalding LLP<br>633 West Fifth Street, Suite 1600<br>Los Angeles, CA 90071 | Date and Time:<br>September 16, 2019 at 10:00 AM PDT |

The deposition will be recorded by this method:  stenographic means

❑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  August 12, 2019

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Anatolie Stati, Gabriel Stati, Ascom Group S.A., Terra Raf Trans Traiding Ltd. _____, who issues or requests this subpoena, are:

James E. Berger, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, jberger@kslaw.com; 212-556-2202

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit C - 24

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. _14-cv-1638 (ABJ) (DAR)_

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _0.00_ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Exhibit C - 25

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit C - 26

# APPENDIX A

## DEFINITIONS

Whenever used herein, the following terms shall have the following meanings:

1. "**Asset**" means any tangible or intangible item of economic value located anywhere in the world in any form, including without limitation, and whether prepaid or deferred, any cash, income, securities, bank accounts, accounts receivable, gifts, trademarks, patents, copyrights, goodwill, personal property, or any interest in any real property, including in any leasehold, or any ownership, membership, credit or other interest in, whether direct or indirect or legal or equitable, or any power, control or discretion otherwise with respect to the disposition of, any asset of any person.

2. "**Kazakh Satellite**" refers to any satellite belonging to Kazakhstan, including but not limited to, the KazSciSat (or KazSaySat) satellite, KazSTSAT (or "KazistiSat") satellite, KazEOSat-2 satellite, or KazEOSat-3 satellite.

3. "**Communication**" means any transmittal of information in the form of facts, ideas, inquiries, or otherwise, located anywhere in the world.  A Document Request for "Communication(s)" calls for you to produce correspondence, telexes, telecopies, electronic mail, all attachments and enclosures thereto, computer tapes, discs, audio recordings, recordings of any other type in any medium of written or oral communications, phone logs, message logs, and notes and memoranda of, or referring or relating to, written or oral communications.

4. "**Debt**" means any money or other item of economic value owed to another person or entity, located anywhere in the world, including but not limited to accounts receivable, accounts payable, arrears, bills, checks, claims, credits, commercial paper, commitments, debentures, debits, dues, duties, encumbrances, executory contracts, guarantees, invoices, IOUs, liabilities, lines of credit, loans, mortgages, obligations, promissory and other notes, responsibilities, securities, suretyships, or vouchers.

5. "**Financial Institution**" means any bank or trust company, including, without limitation, any person whose business or a principal part of whose business consists of any of the following:  borrowing or lending or investing money; administering or managing funds on behalf of other persons; acting as trustee in respect of funds of other persons; dealing in life assurance policies; providing financial services that involve the transfer or exchange of funds, including, without limitation, services relating to financial leasing, money transmissions, credit cards, debit cards, treasury certificates, bankers draft and other means of payment, financial guarantees, trading for account of others (in money market instruments, foreign exchange, interest and index instruments, transferable securities and futures), participation in securities issues, portfolio management, safekeeping of cash and liquid securities, investment related insurance and money changing; but not including the provision of financial services that consist solely of the provision of financial advice.

1

Exhibit C - 27

6.   **"Kazakhstan"** refers to the Republic of Kazakhstan, as well as its government, ministries, divisions, departments, affiliates or subordinate organizations thereof, and any and all persons acting or purporting to act on behalf of any of them or the Republic of Kazakhstan.

7.   **"Person"** includes all natural persons, and any business, legal or governmental entity, corporation, company, or association.

8.   "**You**" means Space Exploration Technologies Corp. (or SpaceX), or its subsidiaries, affiliates, agents, representatives, or employees.

## INSTRUCTIONS

1.   Unless otherwise noted, these areas of designation and inquiry cover the period from January 1, 2016 through the date and time that the deposition record is closed.

2.   The word "including" shall be construed without limitation wherever used herein.

3.   The past tenses of a verb used herein shall include the present tense, and the present tense shall include the past tense.

## DOCUMENT REQUESTS

1.   Information concerning all contracts or agreements governing and/or related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite, including but not limited to those referenced in the attached Exhibit 1.

2.   Information concerning any payments made by Kazakhstan to You related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in the attached Exhibit 1), including such documents and communications sufficient to identify the Financial Institution and account from which and to which such payment was made.

3.   Information concerning any payments made by You to Kazakhstan related to the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in the attached Exhibit 1), including such documents and communications sufficient to identify the Financial Institution and account from which and to which such payment was made.

4.   Information concerning any funds or other Asset placed in escrow or trust in connection with the past (since January 1, 2016) or future launch or operation of any Kazakh Satellite (including but not limited to those referenced in the attached Exhibit 1), including such documents and communications sufficient to identify the Financial Institution where such funds or Asset are held.

5.   Information concerning any Debt owed by You to Kazakhstan, either currently or in the future by virtue of a recurring obligation, relating to the past (since January 1, 2016) or

Exhibit C - 28

future launch or operation of any Kazakh Satellite, including but not limited to those referenced in the attached Exhibit 1.

Exhibit C - 29

**EXHIBIT 1**

Exhibit C - 30



**Advertisement**



# Thanks To SpaceX, Kazakhstan Sends Space

By Nazrin Gadimova December 5, 2018

Exhibit C - 31



The rocket lifted off from Vandenberg Air Force Base on Monday carrying a tota
satellites representing 34 different organizations and 17 countries. / *SpaceX* / ĩ

Kazakhstan has successfully launched two small satellites into Earth's orbit from
Barbara, California. The single orbital-class rocket known as Block 5 Falcon 9, de
SpaceX, was used to send the payload into space.

The rocket lifted off (https://www.spacex.com/webcast) from Vandenberg Air Fo
total of 64 miniature and small satellites representing (https://www.cnet.com/new
rocket-makes-history-with-third-launch-and-landing/) 34 different organizations an
satellites called KazSciSat and KazSTSAT went into orbits on December 3.

Exhibit C - 32

Monday's launch was the first time Kazakhstan used an American-made rocket c
Russian-made Proton launchers that were used in the past. Proton, which is cons
recognizable Russian rockets, has lost almost all of its customers; just a decade a
(https://www.rbc.ru/newspaper/2018/02/12/5a7d698d9a79472a28bf203e) ove

KazSciSat was designed by Kazakhstani developers and will study the ionospher
where terrestrial weather meets space weather. The second satellite, KazSTSAT,
will be used to take high-resolution aerial photographs around the globe and is sa
It weighs more than 100 kg and was developed by a joint team representing the
and British Surrey Satellite Technologies (SSTL).

> *"I am pleased to confirm that following separation from the launch vehicle a joint commissioning te*
> *successfully made contact with KazSTSAT and established that all initial systems checks are nom*
> *quoted (https://www.sstl.co.uk/media-hub/latest-news/2018/sstl-confirms-successful-launch-of-ka*
> *director at SSTL, as saying.*

KazSTSAT is the second satellite SSTL has worked on with Kazakhstan. KazEOS
satellite designed and manufactured by SSTL, was launched in 2012. Together w
expected to broaden the scope of information services provided to the region inc
connections and help satisfy the demand within Kazakhstan for broadband conn

Kazakhstan's very first satellite, KazSat-1, went into orbit for a 12-year mission afte
the Russian-made Proton-K launcher in 2006. Two years later malfunctions occu
satellite stopped responding to control signals. In mid-2009, KazSat-1 was transfe
(https://informburo.kz/stati/orbita-zahoroneniya-hronika-priklyucheniy-sputnikov-k
the graveyard orbit, since its broken condition was irreversible.

Launch costs and SpaceX's competitive pricing has shaken up the rocket launch
cheaper than those offered by Roscosmos. The launch cost (https://www.bloom
cost/) of the re-used Falcon 9, for example, is about $49 million versus Roscosm
launch the Proton M.

Because multiple satellites are launched in a single boost, the entire cost for a lau
country. Kazakhstan's Defense and Aerospace Minister, Beybut Atamkulov, said
government in Astana a little over $1 million.

> *"The cost of transportation to the United States is a part of a total of $1.3 million for the launch of t*
> *November according to reports by KazPravda (https://www.kazpravda.kz/news/tehnologii/atamk*
> *transportirovki-dvuh-kazahstanskih-sputnikov-dlya-zapuska-v-ssha).*

Exhibit C - 33

At the same time, officials in Kazakhstan are not completely shutting down doing
their neighbors to the north. Kazakhstani may still use Russia's Soyuz and Proton

Aset Nurkenov, a spokesperson for the defense and aerospace industry ministry
(https://www.interfax.ru/world/636632) the Astana's intent to launch satellites fro
cosmodrome and the world's first and largest operational space launch facility. D
Kazakhstani territory, the facility is operated by Russia.

With Monday's launch, SpaceX has broken its own record after using the rocket
row. Falcon 9 has since returned safely to Earth landing on the company's drone
Ocean.

Exhibit C - 34